John MEYER, Petitioner–Appellant,

v.

**COLORADO DEPARTMENT OF SO- CIAL SERVICES,**
Respondent–Appellee.

No. 86CA0854.

Colorado Court of Appeals,
Div. III.

June 23, 1988.

Colorado Rural Legal Services, David G. Kroll, Greeley, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wade Livingston, Asst. Atty. Gen., Denver, for respondent-appellee.

HUME, Judge.

Plaintiff, John Meyer, appeals a district court judgment entered pursuant to § 24-4-106(4), C.R.S. (1987 Cum.Supp.), which affirmed the decision of the Colorado Department of Social Services (Social Services) to terminate medicaid funding for his nursing home care. We affirm.

Meyer was determined to be eligible for medicaid funded nursing home care and was admitted to a nursing home on August 9, 1984, following his hospitalization for a gall bladder operation. Then 76 years old, his post-operative status was complicated by a heart condition, high blood pressure, a urinary tract infection which required catheterization, and mobility problems resulting from a previous leg amputation.

The attending hospital physician certified Meyer's need for indefinite nursing home care so that his medical needs (catheterization, administration of various medications, observation, and redressing the surgical incision) could be monitored and provided. The physician's certification of medical need and treatment plan was supplemented by information from the nursing home administrator, and, in addition, a pre-admission screening was performed by a registered nurse employed by the Colorado Foundation for Medical Care, a Peer Review Organization (PRO). The PRO is an independent agency whose duties include reviewing and certifying patients' needs for nursing home medicaid benefits.

The PRO must consider the patient's medical needs described by the physician recommending nursing home care, and must also consider the patient's functional needs pursuant to criteria established by a Social Services rule. That rule provides:

"The guidelines for long term care are based on a functional assessment in which individuals are evaluated in at least the following areas: confusion; contact with reality; behavior; communication; mobility; bathing; dressing; eating/feeding; bowel continence; bladder continence; skin care; vision; hearing; need for supervision and observation; living skills (*i.e.* cooking, shopping, laun-

dry, etc.)" Rule 8.410.11, 10 Code Colo. Reg. 2505–10.

To implement this rule in a uniform and objective fashion, the PRO has developed a system of assigning numerical values to each area of a patient's functional need, with higher scores indicating a greater need for care. These scores are then added to arrive at a total functional needs assessment score. The PRO has also established an internal policy requiring a PRO physician-advisor to review the screener's evaluation if a patient's total functional needs assessment score is 20 or less.

In Meyer's case, the PRO screener's admission evaluation established an aggregate functional needs assessment score of 47, and the PRO certified his eligibility for medicaid funded nursing home care for a period of six months. At the end of that period, the PRO initiated a continued stay review to determine whether Meyer's eligibility should be extended. It sent the nursing home a continued stay worksheet requesting another assessment of Meyer's condition. However, unlike the admission form, the continued stay worksheet did not contain a section to be completed and signed by Meyer's attending physician.

A registered nurse at the nursing home completed the continued stay worksheet and assigned Meyer a total needs assessment score of 14 points. Copies of Meyer's medical charts, which included his attending physician's observations and medical orders, were attached to the completed worksheet, and returned to the PRO.

Upon receipt of the nursing home's assessment, the PRO sent its own registered nurse to the home for an additional on-site review of Meyer's condition. The PRO nurse assigned a total needs assessment score of 15, and, in accord with the PRO's policy, a further review was then conducted by the PRO physician-advisor, who determined that Meyer was no longer eligible for medicaid-funded nursing home care benefits.

That decision was reviewed by a statewide reconsideration panel comprised of three physicians, and subsequently by a hearing officer who conducted an evidentiary review hearing on the issue of Meyer's eligibility. Each of these reviews resulted in a reaffirmation of Meyer's ineligibility.

After exhausting his administrative remedies, Meyer sought judicial review of the agency determination. The district court affirmed the decision to terminate his eligibility for benefits, and this appeal followed.

## I.

■ Meyer first contends that the PRO's failure to obtain a functional assessment report from his attending physician violated state rules and federal regulation requirements governing the conduct of a continued stay review. We disagree.

Meyer argues that the federal regulation requiring the attending physician to document his "reasons and plan for continued stay" mandates the application of a Social Services' rule requiring that the attending physician complete a functional needs assessment report for each continued stay review. We are not persuaded by this argument because it misperceives the entire thrust of the governmental regulatory scheme.

The purpose of the applicable federal regulations is to implement the intent of the United States Congress to safeguard against unnecessary utilization of medicaid care and services. *See* 42 C.F.R. 456.1 through 456.6. In keeping with this purpose, the federal government requires state medicaid participants to establish utilization control procedures for skilled nursing facilities and for intermediate care facilities. *See* 42 C.F.R. 456.250 to 456.338 (skilled nursing facilities); 42 C.F.R. 456.-350 to 456.438 (intermediate care facilities). While certain specified requirements in conducting utilization reviews must be met, participating states are afforded considerable latitude in choosing the methods by which such reviews are actually conducted. For example, 42 C.F.R. 456.401(b) allows participating states to specify methods of review which may be conducted by the care facility; by direct review in the facility; by individuals who are employed by the medi-

cal assistance unit of the medicaid agency or who are under contract to the medicaid agency; or *by any other method.*

Federal regulations expressly require a physician's certification of each applicant's need for nursing home services and a plan for his care *at the time of his initial admission. See* 42 C.F.R. 456.360 and 42 C.F.R. 456.380. In continued stay reviews, however, the regulations only require the reviewing agency to evaluate documentation including the attending physician's reasons and plan for continued stay if the physician believes continued stay is necessary. *See* 42 C.F.R. 456.436(c) and 42 C.F.R. 456.411(g). Nothing in the federal regulations requires that the attending physician must formulate and certify a new treatment plan at the time of each continued stay review.

Similarly, the Colorado Social Services' rules specifically require a physician's certification of the applicant's need and a plan for his care prior to his admission to a nursing home. *See* Rule 8.408.6; 8.408.62(4) and 8.409.4 and 8.409.42(4), 10 Code Colo.Reg. 2505–10. And, consistent with the federal regulations, Social Services' rules do not expressly require the attending physician to formulate and certify a new treatment plan at the time of the continued stay review.

Rather, under Social Services' rules, the attending physician's involvement in the continued stay review process is provided by a requirement that the physician regularly visit with his or her nursing home patients. Rule 8.408.63 (every 30 days in a skilled nursing facility) and 8.409.43 (every 90 days in an intermediate care facility) 10 Code Colo.Reg. 2505–10. The rules also require that the attending physician's orders and progress notes under the treatment plan be written into the patient's medical maintenance record, signed, and made available for review. Rules 8.408.51 and 8.409.31, 10 Code Colo.Reg. 2505–10.

Thus, under the utilization review plan adopted by Social Services, the attending physician's input for purposes of continued stay review can be determined by an examination of the original treatment plan together with the medical records indicating the physician's progress notes, status reports, and orders modifying the patient's medical treatment plan. Using this method of continued stay review is not inconsistent with the federal regulations. *See* 42 C.F.R. 456.401(b).

We conclude that the PRO did not violate either federal or state rules or regulations by conducting an on-site review based upon Meyer's medical records and the PRO nurses' personal observations. Moreover, contrary to Meyer's assertion that the PRO did not properly notify the attending physician of the decision to terminate, the record reflects that the PRO physician-advisor notified Meyer on March 4, 1985, that his physician had been informed of the decision to terminate nursing home benefits.

## II.

■ Meyer next contends that the PRO's point system used in its functional needs assessment was an agency rule or regulation that had not been published in the Code of Colorado Regulations and, thus, could not be used to terminate his medicaid benefits. We disagree.

Although under § 24–4–103(10), C.R.S. (1982 Repl.Vol. 10), an unpublished agency rule cannot be relied on or cited against anyone, that section does not apply to "general statements of policy which are not meant to be binding as rules or rules of agency organization." Section 24–4–103(1), C.R.S. (1982 Repl.Vol. 10). "Rule" is defined as "the whole or any part of every agency statement of general applicability and future effect implementing, interpreting, or declaring law or policy or setting forth the procedure or practice requirements of any agency." Section 24–4–102(15), C.R.S. (1982 Repl.Vol. 10). In contrast to a rule, a general statement of policy does not establish a "binding norm," nor does it finally determine the issues or rights to which it is addressed. 2 K. Davis, *Administrative Law Treatise* 7.5 (2d ed. 1979).

Social Services published Rule 8.401.11, 10 Code Colo.Reg. 2505–10, which set forth an open-ended list of fifteen areas which

must be considered in evaluating the functional needs of medicaid recipients for nursing home care. It then contracted with the PRO, who devised a numerical system for the latter's use in evaluating those factors. The numerical point system provided a tool for use by PRO screeners in an attempt to quantify rationally the extent of a recipient's need in each area defined by the published rule. The PRO also formulated an internal policy guideline requiring review by a physician-advisor when the initial screener's total needs assessment score fell below a 20–point threshold.

In this case, the physician-advisor and the reconsideration panel were free to make independent medical judgments about Meyer's need for continued nursing home care. They were not bound by the screener's point assessment determination or by the 20–point threshold, which served only to trigger further consultation and review. Thus, the PRO point system was not required to be published, and it was proper for the PRO to use the continued stay worksheet as it did here.

### III.

Meyer finally contends that application of the point system resulted in an arbitrary and capricious determination of his need and therefore was violative of his due process rights. We disagree.

Contrary to Meyer's contention, use of the point system did not finally determine his continued need for nursing home care. Since the system was only used to indicate a need for further review, its application was not determinative, arbitrary, or capricious.

Judgment affirmed.

STERNBERG and METZGER, JJ., concur.