Nelson WEAVER, Petitioner–Appellant,

v.

COLORADO DEPARTMENT OF SO-
CIAL SERVICES,
Respondent–Appellee.

No. 88CA1437.

Colorado Court of Appeals,
Div. III.

March 22, 1990.

Rehearing Denied April 26, 1990.

David G. Kroll, Greeley, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and David P. Temple, Asst. Atty. Gen., Denver, for respondent-appellee.

Opinion by Judge CRISWELL.

Petitioner, Nelson Weaver, appeals from the judgment of the district court that approved the decision of the Department of Social Services (the department) determining that he was no longer eligible to receive benefits under the Home and Community Based Services (HCBS) program. He asserts that the department's decision should be disapproved because (1) the notice of the denial of benefits did not comply with statutory and constitutional requirements, (2) the department and its administrative law judge (ALJ) improperly used a point system guideline as a binding regulation, and (3) the department failed to demonstrate that he had undergone a physical or functional improvement in his condition. We reverse.

The HCBS program is a federally funded, state-administered program that has, as one of its purposes, to provide individuals, who otherwise would be institutionalized in a nursing home, health and medical services in their own homes. *See* 42 U.S.C. § 1396a(a)(10)(D) (1987 Supp.); § 26–4.5–102(1)(b) and § 26–4.5–103(5), (6), and (13), C.R.S. (1989 Repl.Vol. 11B). In order to be eligible for such long-term care under this program, the individual must be in "need of the level of care available in a nursing home." Section 26–4.5–103(13).

To determine eligibility, the department's published regulations, 10 Code Colo.Reg. 2505–10, § 8.401.11, require a "functional needs assessment" in which the individual is evaluated in a number of different areas ranging from his physical and mental condition to his ability to care for himself. This assessment must demonstrate that the individual needs services at a level available in a nursing home "at least on a five day a week basis." 10 Code Colo.Reg. 2505–10, § 8.401.14.

Although the published regulations do not specify how such assessment is to be made, in practice, the person performing the assessment employs a "point system" whereby a particular number of points (indicating the degree of need) is assigned to

each area of evaluation. If the total accumulated points equal 20 or more, the individual is considered to be eligible to receive HCBS benefits; if the total points assessed are less than 20, the individual is considered as not requiring a nursing home level of care.

Petitioner, who suffers from cerebral palsy, partial deafness, and severe cervical arthritis, was given a functional assessment in 1984 that resulted in his accumulation of 38 points. Accordingly, he was found eligible for, and began to receive, HCBS benefits.

In March 1985, a reassessment resulted in a score of 39 points, and his benefits continued.

A year later, however, although his treating physician opined that there had been no change in his medical or physical condition, the person assessing petitioner's functional needs assigned him only 13 points, and an "on site" review of his condition earned him only 16 points. As a result, the department concluded he was no longer eligible for such benefits, and his appeal of the department's decision to the ALJ was rejected. Likewise, his petition to the district court, filed pursuant to § 24–4–106(4), C.R.S. (1988 Repl.Vol. 10A) was denied.

I.

Petitioner first asserts that the notice provided to him, advising him of the prospective denial of benefits, was inadequate as a matter of law. We agree.

■ The parties agree that, once petitioner was initially determined to be eligible for HCBS benefits, his right to continued receipt of the same was similar to a "property" right for purposes of the application of the due process clause of the Fourteenth Amendment. Thus, he could be deprived of those continued benefits only by means of a procedure that complied with the tenets of due process of law. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct.

1011, 25 L.Ed.2d 287 (1970) (procedural due process requires a pre-termination evidentiary hearing before public assistance payments to welfare recipient may be discontinued).

To implement this precept, the federal statute requires a "fair hearing" before benefits may be denied, 42 U.S.C. § 1396a(a)(3) (1982), and federal regulations require that, before any adverse action is taken, the individual must be provided with a written notice setting forth "the reasons for the intended action" and a statement of "the specific regulations that support ... the action." 42 C.F.R. § 431.210 (1988). Similarly, the department's regulations also require at least a 10–day advance notice of adverse action, which must include both "the reasons for the intended action [and] the specific regulations" that support that action. 10 Code Colo.Reg. 2505–10, § 8.059.12 and § 8.059.123.

■ In this case, the pre-termination notice issued by the department's agent advised petitioner that his medical and functional needs did not necessitate treatment in or at a nursing home level of care. It also described, generally, the areas in which petitioner appeared to have no problems. We assume, without deciding, that these statements were sufficient to advise petitioner of the "reasons" for the department's intended action.

However, neither this notice, nor the later notice advising petitioner of the adverse action by the reconsideration panel, provided him with any accurate information as to the applicable regulations. The state statute defining a "long-term-care eligible person," § 26–4.5–103(13), C.R.S. (1989 Repl. Vol. 11B), was not referred to, nor was the department's regulation establishing the substantive tests for eligibility for HCBS benefits. *See* 10 Code Colo.Reg. 2505–10, § 8.401.11, et seq.

These two notices not only suffered from the error of omission, but each of them also contained information that was affirmative-

ly misleading. The department's first notice referred to three regulations as governing its actions; none of them were applicable to the HCBS program. The first governs reimbursement of costs to nursing homes, the second regulates the handling of a patient's income and possessions by a nursing home, and the third describes the method that a provider of services to a nursing home must use in reporting its activities. Likewise, the regulations pursuant to which the reconsideration panel's notice said it acted refer to matters entirely unrelated to the eligibility of petitioner to continue to receive HCBS benefits.

Thus, any recipient of these notices who sought out the regulations referred to could not have ascertained the regulatory standards governing his right to benefits. His efforts would have resulted in nothing but confusion.

■ Both the ALJ and the district court concluded that these notices were legally inadequate. Nevertheless, both also concluded that, because petitioner was represented by counsel, he was unable to demonstrate that the inadequacy of the notices worked to his prejudice. We reject such an analysis.

Under some circumstances, the very authority of an administrative agency to act depends upon its issuance of adequate notice of its proceedings. *See Holly Development, Inc. v. Board of County Commissioners*, 140 Colo. 95, 342 P.2d 1032 (1959); *Fedder v. McCurdy*, 768 P.2d 711 (Colo. App.1988).

Moreover, it has been held that, if, as here, there is a requirement that the administrative notice make reference to the specific regulations involved, a notice that fails to comply with such requirement renders the notice ineffective, even if the interested party participates in the hearing. *Regan v. D'Elia*, 82 A.D.2d 890, 440 N.Y.S.2d 290 (1981). *See Moffitt v. Austin*, 600 F.Supp. 295 (W.D.Ky.1984). *See also Department of Health v. Donahue*, 690 P.2d 243 (Colo. 1984) (if a state regulation provides for a

procedure beyond that required by considerations of procedural due process, a failure to comply with that requirement is itself a violation of due process).

■ We hold, therefore, that, in the absence of a waiver of any defect in the form of the notice, a notice of adverse action that does not substantially comply with the federal and state requirements cannot provide the basis for a deprivation of benefits. *See Goldberg v. Kelly, supra; Regan v. D'Elia, supra.*

■ Further, while there may be circumstances in which a failure to comply with an administrative regulation must result in actual prejudice in order to render the administrative action invalid, *see Ricci v. Davis*, 627 P.2d 1111 (Colo.1981), the prejudice that results from a patently misleading adverse action notice cannot be measured by whether the recipient is represented by counsel. The constitutional adequacy of a pre-denial notice cannot be tested on a subjective basis; its validity for due process purposes is dependent upon its adequacy in providing the necessary information to a reasonable person. The courts are not required to determine the adequacy of such a notice based upon the existence of some specialized knowledge of the recipient or his agent.

■ We conclude, therefore, that the notices here did not comply with the constitutional or regulatory standards for such notices. Thus, the department had no authority to terminate petitioner's benefits.

## II.

Because the issues may arise again in any subsequent proceeding that the department may initiate, and because the parties have fully briefed those issues, we shall also consider petitioner's other two assertions.

■ Petitioner argues that the denial of his benefits, based upon an application of the point system, was improper because

the point system has never been adopted as a formal regulation. Under the circumstances disclosed by this record, we agree.

The Administrative Procedure Act (APA), § 24–4–101, et seq., C.R.S. (1988 Repl.Vol. 10A), establishes the procedure that must be followed by a state agency to adopt any "rule." This procedure requires notice and public hearing where "interested parties" may be heard. Section 24–4–103, C.R.S. (1988 Repl.Vol. 10A). The APA specifically provides that no rule "shall be relied upon or cited against any person," unless it has been made available in accordance with the procedures established. Section 24–4–103(10), C.R.S. (1988 Repl.Vol. 10A).

As we have noted, in evaluating eligibility for HCBS benefits, the department's assessor assigns a numerical evaluation to a potential recipient's functional deficits. Unless the total assigned to an individual equals 20 or more, the assessor must conclude that the applicant is not in need of a level of services normally provided in a nursing home. However, this point system method of evaluation has never been made the subject of a formally adopted rule or regulation.

Further, there is no explanation given in the record as to whether the point evaluation system specifies the weight to be given to each functional area assessed or whether objective or subjective criteria are to be used in the ratings given. Indeed, the department has admitted that the method of its use has been subject to change over the years.

Here, the ALJ utilized this point system as the sole criterion upon which to determine petitioner's continuing eligibility for benefits. Yet, neither petitioner nor anyone else was given proper notice of its preeminent significance in determining benefit eligibility.

Under such circumstances, we hold that the ALJ's use of it violated the strictures of § 24–4–103(10). *See Jefferson County School District v. Division of Labor*, 791 P.2d 1217 (Colo.App.1990).

In reaching this determination, we have considered this court's opinion in *Meyer v. Colorado Department of Social Services*, 758 P.2d 192 (Colo.App.1988), which reviewed a similar point system that had been used by a peer review organization for its internal evaluation of an individual. The evidence in that case indicated that the point system there was not used as a binding criterion, but only as an initial guideline. Thus, a panel of this court concluded that it was not a "rule" for purposes of the APA, because it did not establish a "binding norm." Accordingly, *Meyer* is distinguishable from the situation here in which the ALJ treated this method of evaluation as the sole criterion for his ultimate determination of eligibility for HCBS benefits.

### III.

Petitioner also contends that, given the circumstances portrayed by this record, the requirements of due process of law required proof that his physical or functional capabilities had changed since he was initially determined to be eligible for benefits before his right to such benefits could be terminated. Thus, he argues that the ALJ erred in approving a termination of benefits in the absence of proof of such a change. We agree with this contention.

The record reveals that petitioner's personal needs were evaluated by use of the point system on four separate occasions. The first two evaluations resulted in scores of 38 and 39, respectively, while the last two evaluations, performed no more than a year later by different individuals, developed scores of only 13 and 16, respectively. This wide range of scores occurred even though, according to his treating physician, petitioner's medical and physical condition remained generally unchanged. The scores given those disabilities, however, changed by very significant amounts.

Illustrative of these scoring changes are the ratings given in the four assessments to the following functional categories:

|           | 9/84 | 4/85 | 2/86 | 4/86 |
|-----------|------|------|------|------|
| Behavior  | 0    | 6    | 0    | 0    |
| Communication | 2 | 2    | 0    | 0    |
| Bowel     | 4    | 6    | 0    | 0    |
| Bladder   | 8    | 2    | 0    | 4    |
| Hearing   | 4    | 2    | 0    | 4    |
| Living Skills | 7 | 9    | 7    | 3    |

As already noted, the department concedes that the benefits being received by petitioner constitute property rights for Fourteenth Amendment purposes. *Goldberg v. Kelly, supra.* And, it is axiomatic that a person's property cannot be forfeited as a result of arbitrary governmental action. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of the government.") Therefore, the denial of benefits to petitioner cannot be based upon arbitrary considerations. *See Ottman v. Fisher*, 319 A.2d 56 (Me.1974) (hearing officer acted arbitrarily in terminating benefits by relying, without exercising his own discretion, upon federal official's letter that did not have status of regulation).

Based upon this general principle, the courts have concluded that, if an individual has once been determined to be eligible for social service benefits, due process prevents a termination of those benefits absent a demonstration of a change in circumstances, or other good cause. The presumption that a condition, once shown to exist, continues to exist, as well as the considerations that underlie the doctrines of res judicata and collateral estoppel, require a showing of some change in circumstances if the termination of benefits is not to be deemed arbitrary. *See Byron v. Heckler*, 742 F.2d 1232 (10th Cir.1984) (relying upon decisions from the First, Second, Third, Sixth, Eighth, and Ninth Circuits); *Trujillo v. Heckler*, 569 F.Supp. 631 (D.Colo.1983).

While the foregoing decisions did not involve the same type of benefits being provided to petitioner, their common rationale is based upon those broad concepts of fairness and reasonableness that naturally inhere in the concept of due process of law. Consequently, we determine that that rationale applies to the benefits at issue here.

In this case, the ALJ made the specific determination that it was unnecessary to show "that circumstances ... have altered sufficiently to warrant the action of termination." The ALJ, thus, did not determine, and apparently did not consider, *why* the four sets of scores differed so significantly, although he adopted the most recent score as his own and used it as the determining factor.

Yet, the record indicates that the latter scores could have been influenced, not by any objective functional improvement by petitioner, but by differences in the attitudes exhibited by the different evaluators. Thus, the later scores here, which led to a revocation of benefits, could have resulted from the purely subjective outlook of a later evaluator—a result prohibited by concepts of due process.

Since the ALJ concluded that no change in circumstances was required to be demonstrated, he made no findings upon this issue. Thus, we do not pass upon the sufficiency of the present record to establish any such change.

## IV.

Petitioner's request for fees under 42 U.S.C. § 1988 (1982) is denied. The department is not a "person" under 42 U.S.C. § 1983 (1982), and this was not an injunctive action allowing the award of such fees. *Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See Oten v. Colorado Board of Social Services*, 738 P.2d 37 (Colo.App.1987).

The judgment of the district court is reversed, and this cause is remanded to it with directions to remand the matter to the department with directions to reinstate, without interruption, petitioner's benefits.

TURSI and METZGER, JJ., concur.