COLORADO OFFICE OF CONSUMER COUNSEL and the Colorado Municipal League, Intervenors–Appellants,

v.

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Petitioner–Appellee,

and

The Public Utilities Commission of the State of Colorado and Arnold H. Cook, Ronald L. Lehr, and Andra Schmidt, the individual Commissioners thereof, Respondents–Appellees,

and

AT & T Communications of the Mountain States, Inc.; MCI Telecommunications Corporation; the Colorado Association of Radio Common Carriers; Competitive Telecommunications; Association of Colorado and Wyoming; Eagle Telecommunications, Inc.; US Sprint Communications Company; and Universal Telephone Company of Colorado, Intervenors and Co–Respondents–Appellees.

No. 89SA400.

Supreme Court of Colorado, En Banc.

July 15, 1991.

As Modified on Denial of Rehearing Sept. 16, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Neil L. Tillquist, First Asst. Atty. Gen., Deborah S. Waldbaum, Asst. Atty. Gen., Denver, for intervenor-appellant Colorado Office of Consumer Counsel.

Gorsuch, Kirgis, Campbell, Walker and Grover, Dudley P. Spiller, Jr., Joseph B. Wilson, Denver, for intervenor-appellant Colorado Mun. League.

Eiberger, Stacy, Smith & Martin, Raymond W. Martin, Roy A. Adkins, Laurie Bennett, and Russell P. Rowe, Robert L. Connelly, Denver, for petitioner-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mana L. Jennings, Asst. Atty. Gen., Denver, for respondents-appellees.

No appearance by intervenors and co-respondents-appellees.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellant, the Colorado Office of Consumer Counsel (the Office), seeks review of a judgment of the District Court in and for the City and County of Denver setting aside a decision of the Public Utilities Commission (the Commission) applying provisions of the Intrastate Telecommunications Services Act, sections 40–15–101 to –404, 17 C.R.S. (1984 & 1990 Supp.) (the Act), to services provided by appellee The Mountain States Telephone and Telegraph Company (Mountain States). The district court held that the Commission exceeded its authority in conducting a rule-making proceeding without adhering to requisite procedures established by the State Administrative Procedure Act, section 24–4–103, 10A

C.R.S. (1988) (the APA). The Colorado Municipal League (the League) has intervened to join the Office in asserting that the procedural requirements in question were not applicable to the administrative proceedings held in this case because such proceedings were not rule-making proceedings.[1] We affirm the judgment of the district court.

## I

The Act provides for Commission regulation of intrastate telecommunications services in Colorado.[2] Part 2 of the Act provides for full Commission regulation of certain basic local services. §§ 40–15–201 to –207, 17 C.R.S. (1984 & 1990 Supp.). Part 4 of the Act provides that certain services shall not be subject to Commission regulation. §§ 40–15–401 to –404, 17 C.R.S. (1984 & 1990 Supp.). Part 3 of the Act provides that emerging competitive services not subject to Part 2 or Part 4 of the Act shall be subject to relaxed Commission regulation. §§ 40–15–301 to –308, 17 C.R.S. (1984 & 1990 Supp.).

Each of these three parts of the Act refers to general types of telecommunications services encompassed within that part's provisions. Thus, the Act provides general basic guidelines for classification of the myriad services and products developed by telecommunications providers subject to Commission regulation.

The Act was approved July 2, 1987. Ch. 313, 1987 Colo.Sess.Laws 1476. By order dated July 2, 1987, the Commission initiated Case No. 6635 to explore in general what telecommunications products and services warranted relaxed regulation pursuant to Part 3 of the Act. The case was not limited to products and services provided by Mountain States. The Commission ultimately suspended its proceedings in Case No. 6635 pending its final decisions in two other cases, Case No. 6645 and Case No. 6647.

By letter dated August 5, 1987, Mountain States informed the Commission of the corporation's intent to delete certain of its services from Commission regulation, pursuant to Part 4 of the Act. The Office, the Colorado Association of Radio Common Carriers, and the Commission staff filed documents in opposition to Mountain States' proposal. The Commission responded by initiating two proceedings to determine which statutory provisions governed Mountain States' tariffed services. On September 28, 1987, the Commission initiated Case No. 6645 as a declaratory order proceeding, pursuant to Commission Rule 60(a) and section 24–4–105(11), 10A C.R.S. (1988), to identify which Mountain States services would be deregulated pursuant to Part 4 of the Act.[3] On October 27, 1987, the Commission initiated Case No. 6647 as a declaratory order proceeding to identify which Mountain States services

1. The Commission has not appealed the district court's judgment.

2. The Act defines "Telecommunications service" as "the electronic or optical transmission of information between separate points by prearranged means." § 40–15–102(29), 17 C.R.S. (1984 & 1990 Supp.). Although the generic terms "product" and "facility" are not defined, the Act authorizes Commission regulation of telecommunication services, products and facilities. *See* § 40–15–201, 17 C.R.S. (1984 & 1990 Supp.).

3. Section 24–4–105(11) states as follows:
Every agency shall provide by rule for the entertaining, in its sound discretion, and prompt disposition of petitions for declaratory orders to terminate controversies or to remove uncertainties as to the applicability to the petitioners of any statutory provision or of any rule or order of the agency. The order

disposing of the petition shall constitute agency action subject to judicial review.
Commission Rule 60(a) states as follows:
*Declaratory Orders*
(a) *General.* The Commission may issue a declaratory order to terminate a controversy or to remove an uncertainty as to the applicability to an applicant or a petitioner of any statutory provision or Commission rule, regulation or order.
(1) Any person, firm, or corporation may file an application in an original proceeding, or a petition in a pending proceeding for a declaratory order.
(2) The application or petition shall be subject to Rule 57, Colorado Rules of Civil Procedure, except the words *The Commission* shall be substituted for the words *District* and *Superior Courts,* and the word *order* shall be substituted for *judgment* or *decree.*

would be subject to full regulation pursuant to Part 2 of the Act.

In Case No. 6645, the Commission staff prepared a list of tariffed Mountain States services arguably eligible for deregulation under Part 4 of the Act. The Commission invited interested parties to intervene and comment upon the list, whereupon twelve entities filed various pleadings in the case. The Commission assigned burdens of proof, authorized discovery, and set the case for an evidentiary hearing before a hearing examiner. At the outset of the December 3, 1987, hearing, the hearing examiner stated that, although the Commission did not so order, notice had been sent in compliance with those portions of the APA applicable to agency rule-making proceedings.

By decision dated January 6, 1988, the Commission enumerated certain specific tariffed services of Mountain States that were subject to the deregulation provisions of Part 4 of the Act. Mountain States, the Office and other intervenors sought judicial review of that decision. The Commission ultimately confessed error, and Case No. 6645 was remanded to the Commission for new proceedings.

Attached to the Commission order initiating Case No. 6647, which case underlies this appeal, was a document listing ninety-eight tariffed Mountain States services proposed for full regulation pursuant to Part 2 of the Act. On February 10, 1988, the Commission entered an order permitting substitution of another list of services and products prepared by the Commission staff for the initial attachment. The order provided that procedures similar to those used in Case No. 6645 would be utilized in Case No. 6647 and that "any party having a differing view" as to which Mountain States services should be fully regulated under Part 2 of the Act would have the burden of establishing that such services were not correctly identified by the Commission staff as subject to such full regulation.

On that same day, the Commission sent information to several entities inviting their participation in Case No. 6647. Several entities did file pleadings contesting the revised list of Mountain States services arguably subject to full regulation,[4] and the Office intervened to support the Commission's position.

■ A hearing was conducted in Case No. 6647 on March 14, 1988, before three commissioners. On April 27, 1988, the Commission issued its initial decision. *See* § 40–6–109(6), 17 C.R.S. (1984). The Commission found that Mountain States challenged only fourteen of the ninety-eight services proposed for full regulation and concluded that those fourteen services were subject to full regulation pursuant to Part 2 of the Act. After reviewing petitions for modification or reconsideration filed by Mountain States and other entities, the Commission issued its final decision on October 27, 1988, affirming its initial decision.[5]

4. These parties included the League; AT & T Communications of the Mountain States, Inc.; MCI; the Colorado Association of Radio Common Carriers; Competitive Telecommunications, Inc.; US Sprint Communications Company; and Universal Telephone Company of Colorado.

5. During oral arguments the question arose as to whether this appeal of Case No. 6647 had become moot. Mountain States subsequently filed a status report indicating that it no longer disputed the Commission's conclusions regarding regulation of 13 of the disputed services and that the remaining item "involves a *de minimis* amount of revenues" and was no longer "a contentious matter." The Office filed a status report which stated that discussions regarding the classification of disputed services were partly successful but did not "resolve all disputed services."

While all issues respecting what services are subject to full Commission regulation under Part 2 of the Act have seemingly been resolved, the question of the nature of the proceedings employed by the Commission to determine what services were subject to full regulation remains a viable issue. *Colorado–Ute Electric Ass'n v. Public Util. Comm'n,* 760 P.2d 627 (Colo.1988). This court has recognized that a case need not be deemed moot because an issue is no longer contested if the issue is of public importance and is capable of repetition, but might escape judicial review. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Comm'n,* 620 P.2d 1051 (Colo.1980); *Rocky Mountain Ass'n of Credit Management v. District Court of the City and County of Denver,* 565 P.2d 1345 (Colo.1977).

Mountain States timely filed a petition for judicial review of the Commission's decision in the District Court in and for the City and County of Denver. C.R.C.P. 106(a)(4); § 40-6-115, 17 C.R.S. (1984). It asserted that the Commission committed several procedural errors, including failure to comply with APA provisions governing agency rule-making procedures, the imposition of an unfair burden of proof on Mountain States and other intervenors to show that the Commission's initial determination of services and products was improper, and the issuance of a decision without an appropriate hearing and in the absence of essential findings of fact. On August 23, 1989, the district court entered judgment vacating the Commission's decision on the ground that the Commission had in fact conducted a rule-making proceeding without complying with applicable requirements of the APA.[6] The Office perfected an appeal pursuant to section 40-6-115(5), 17 C.R.S. (1984).

## II

### A

■ The scope of district court review of Commission decisions is controlled by section 40-6-115(3) of the Public Utilities Law, which states in pertinent part as follows:

[T]he district court shall decide all relevant questions of law and interpret all relevant constitutional and statutory provisions. The review shall not extend further than to determine whether the commission has regularly pursued its author-

ity, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence.

§ 40-6-115(3), 17 C.R.S. (1984). In recognition of the fact that section 40-6-115(3) does not provide specific standards applicable to the review proceedings therein authorized, this court has drawn upon the agency review provisions contained in section 24-4-106(7), 10A C.R.S. (1988), of the APA to establish appropriate factors for judicial analysis of Commission decisions. *Ace West Trucking v. Public Util. Comm'n*, 788 P.2d 755 (Colo.1990); *Home Builders Ass'n of Metro. Denver v. Public Util. Comm'n*, 720 P.2d 552 (Colo.1986). Those factors include (1) whether the decision is based on the evidence introduced at the evidentiary stage of the administrative proceedings; (2) whether the Commission's decision is supported by findings of fact; (3) whether the Commission's decision-making process was conducted pursuant to applicable legislative standards; and (4) whether the Commission acted within the authority conferred upon it. *Home Builders Ass'n*, 720 P.2d at 560.

### B

■ In Case No. 6647, the district court applied the factors enunciated in *Home Builders Ass'n* and concluded that the

---

*See also Denver Fire Fighters Local 858, IAFF v. Civil Serv. Comm'n of the City and County of Denver*, 782 P.2d 1222 (Colo.App.1989); *Lininger v. City of Sheridan*, 648 P.2d 1097 (Colo.App. 1982). Although the precise factual circumstances presented by Case No. 6647 are unlikely to recur, the question of the scope of the Commission's authority is capable of repetition, is of public importance, and is not readily susceptible to judicial review. We therefore address that question.

**6.** Section 24-4-103, 10A C.R.S. (1988), establishes procedures for agency rule-making activities, including the following: publication of notice of the proposed rule-making, including the terms or substance of the proposed rule or a description of the subjects and issues involved, § 24-4-103(3), 10A C.R.S. (1988); holding a public hear-

ing at which all interested persons shall have opportunity to submit written data, views or arguments, § 24-4-103(4), 10A C.R.S. (1988); submission of the proposed rule or amendment to the attorney general for an opinion as to its constitutionality and legality, § 24-4-103(8)(b), 10A C.R.S. (1988); submission of the proposed rule to the legislative drafting office to determine whether the rules and amendments are within the agency's rule-making authority, § 24-4-103(8)(d), 10A C.R.S. (1988); and submission to the legislative drafting office of a fiscal impact statement identifying the types of persons who will bear the costs and the types of persons who will benefit, directly or indirectly, from the proposed rule. §§ 24-4-103(4.5)(a)(I)-(IV), 10A C.R.S. (1988).

Commission exceeded its authority by not following APA provisions applicable to agency rule-making proceedings. We thus must decide whether, as the district court found, the proceeding engaged in by the Commission in Case No. 6647 was essentially rule-making in nature or, as the Office and the League assert, was basically an adjudicatory proceeding.

The Commission's authority to regulate public utilities is defined by Article XXV of the Colorado Constitution and by various statutory provisions adopted by the General Assembly. Article XXV delegates to the Commission legislative authority to regulate public utilities previously vested in the General Assembly. *Mountain States Tel. and Tel. v. Public Util. Comm'n (Mountain States II)*, 763 P.2d 1020 (Colo.1988); *Miller Bros., Inc. v. Public Util. Comm'n*, 185 Colo. 414, 525 P.2d 443 (1974). The Article provides in relevant part:

In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor ... as a public utility ... is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado....

Colo. Const., art. XXV. The Commission is also granted regulatory authority by section 40–3–102 of the Public Utilities Law, as follows:

**Regulation of rates—correction of abuses.** The power and authority is hereby vested in the public utilities commission of the state of Colorado and it is hereby made its duty to adopt all necessary rates, charges, and regulations to govern and regulate all rates, charges, and tariffs of every public utility of this state to correct abuses; to prevent unjust discriminations and extortions in the rates, charges, and tariffs of such public utilities of this state; to generally supervise and regulate every public utility in

this state; and to do all things, whether specifically designated in articles 1 to 7 of this title or in addition thereto, which are necessary or convenient in the exercise of such power....

§ 40–3–102, 17 C.R.S. (1984). These provisions provide the Commission with broad authority to accomplish its constitutional and legislative purposes. *Mountain States Tel. and Tel. Co. v. Public Util. Comm'n*, 195 Colo. 130, 135, 576 P.2d 544, 547 (1978).

The Commission's powers are not unlimited, however. Specific statutory provisions regulating public utilities serve to restrict the Commission's authority. *See Peoples Natural Gas Div. v. Public Util. Comm'n*, 626 P.2d 159 (Colo.1981). Furthermore, we have recognized that because the Commission's delegated powers are legislative in nature, they do not extend generally to adjudicatory matters. *City of Montrose v. Public Util. Comm'n*, 629 P.2d 619 (Colo.1981) (Commission authorized to establish manner in which utilities assess consumers for utility franchise charges); *Haney v. Public Util. Comm'n*, 194 Colo. 481, 574 P.2d 863 (1978) (Commission not authorized to impose fines for violation of Commission laws). *But see Peoples Natural Gas Div. v. Public Util. Comm'n*, 698 P.2d 255 (Colo.1985) (Commission may initiate complaint and impose reparations for illegal overbilling). Most importantly, because of the broad authority reposed in the Commission, procedural requirements shape the exercise of that authority in various contexts.

C

The Office and the League concede that the procedures utilized in Case No. 6647 did not comport with the procedures applicable to the exercise of the Commission's rule-making authority established by section 24–4–103, 10A C.R.S. (1988). They contend that the proceedings were not rule-making proceedings, but rather were primarily adjudicatory in nature and therefore were not subject to APA provisions applicable to the Commission's rule-making authority. We disagree with this argument.

The APA defines "[r]ule-making" as the "agency process for the formulation, amendment, or repeal of a rule." § 24-4-102(16), 10A C.R.S. (1988). A "[r]ule," which includes a "regulation," means "the whole or any part of every agency statement of general applicability and future effect implementing, interpreting, or declaring law or policy or setting forth the procedure or practice requirements of any agency." § 24-4-102(15), 10A C.R.S. (1988).

The APA contrasts rule-making with "[a]djudication," and defines the latter as "the procedure used by an agency for the formulation, amendment, or repeal of an order and includes licensing." § 24-4-102(2), 10A C.R.S. (1988). An "[o]rder" is defined as "the whole or any part of the final disposition ... by any agency in any matter other than rule-making." § 24-4-102(10), 10A C.R.S. (1988).

While these APA provisions suggest that agency rule-making functions are clearly distinct from agency adjudicative functions, the experience of agency process has proved to be to the contrary. *See* K. Davis, *Administrative Law of the Eighties, Supplement to the Administrative Law Treatise* § 7:25 at 262 (1989); A. Bonfield, *State Administrative Rule Making*, § 3.2.2 (1986). Agency proceedings often require application of both rule-making and adjudicatory authority because of the nature of the subject matter, the issues to be resolved, or the interests of parties or intervenors. In general, agency proceedings that primarily seek to or in effect determine policies or standards of general applicability are deemed rule-making proceedings. § 24-4-102(15), 10A C.R.S. (1988); *Home Builders Ass'n of Metro. Denver v. Public Util. Comm'n*, 720 P.2d 552 (Colo. 1986). *See Texaco, Inc. v. Federal Power Comm'n*, 412 F.2d 740, 744 (3d Cir.1969). Agency proceedings which affect a specific party and resolve particular issues of disputed fact by applying previously determined rules or policies to the circumstances

of the case are deemed adjudicatory proceedings. *See Home Builders Ass'n*, 720 P.2d 552; *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973). The determination of whether a particular proceeding constitutes rule-making requires careful analysis of the actual conduct and effect of the proceedings as well as a determination of the purposes for which it was formally instituted. *Landmark Land Co. v. City and County of Denver*, 728 P.2d 1281 (Colo.1986); *City and County of Denver v. Eggert*, 647 P.2d 216 (Colo.1982); *Jefferson School Dist. R-1 v. Division of Labor*, 791 P.2d 1217 (Colo.App.1990); *Weaver v. Colorado Dept. of Social Services*, 791 P.2d 1230 (Colo.App.1990).

The Office and the League emphasize that Case No. 6647 was initiated by the Commission as a declaratory order proceeding, pursuant to section 24-4-105(11), to examine the question of what tariffed Mountain States services should be deemed subject to full Commission regulation pursuant to the provisions of Part 2 of the Act. They assert that such flexibility in process is necessary and appropriate to enable the Commission to administer newly adopted statutory provisions expeditiously and fairly.

In our view, the record as a whole does not support the conclusion that Case No. 6647 was designed primarily for resolution of particular issues affecting only Mountain States. In July of 1987, the Commission was faced with the responsibility of implementing new statutory provisions regulating telecommunications services. On July 2, 1987, the Commission initiated Case No. 6635 to investigate generally what services and products should be subject to regulation under Part 3 of the Act.[7] While that case was ultimately suspended, the suspension was ordered in response to the fact that Case No. 6645 and Case No. 6647 had been instituted. This sequence of events suggests that not only were all three proceedings closely related, but that

**7.** The order initiating Case No. 6635 does not expressly define the nature of that proceeding. However, the broad notice provisions enunciated therein strongly suggest that it was initiated as a rule-making proceeding.

all three were of importance to the public, to all public utilities and to the Commission in the exercise of its responsibility to develop general policies for implementation of Parts 2, 3 and 4 of the Act.

The direct interrelationship of Case No. 6647 and Case No. 6645 is unmistakable. Portions of the record in Case No. 6645 form a substantial part of the record in Case No. 6647. All participants, as well as the presiding commissioners, expressly noted that the Commission's classification of services subject to full regulation under Part 2 of the Act had a direct bearing on its classification of services not subject to regulation under Part 4 of the Act. Throughout the hearing, participants volunteered and were requested to give opinions about the meaning of and the legislative intent behind particular provisions of the Act. The record supports the conclusion that the primary purpose for the initiation of Case No. 6647 was to assist the Commission in developing policies appropriate for the task of determining which particular telecommunications products and services should be considered subject to full regulation, relaxed regulation or no regulation under Parts 2, 3 and 4 of the Act.

Case No. 6647 was not initiated primarily to resolve disputes over historic facts. The basic disagreements explored in the pleadings and at the hearing were disagreements concerning descriptions of services, the meaning of terms contained in the Act, and the General Assembly's intent or rationale for adopting various statutory provisions. Case No. 6647 could not have been resolved fully and fairly in the absence of the development of administrative standards to remedy the Act's lack of precise definitions. Those standards and the administrative policies compelling their adoption would necessarily inform future Commission decisions. Thus, while the decision appears in form as a classification of a single public utility's services, it in effect necessarily establishes standards and policies applicable to telecommunications services of all public utilities.

The League argues that the Commission has implied authority pursuant to section 40-3-102, 17 C.R.S. (1984), section 24-4-105(11), 10A C.R.S. (1988), and Rule 60 of the Commission's Rules of Practice and Procedure to entertain declaratory actions on its own initiative. The Commission's authority to initiate various innovative proceedings compatible with its responsibility to regulate public utilities pursuant to broad constitutional and legislative guidelines is well established. *See, e.g., Mountain States Tel. and Tel. Co. v. Public Util. Comm'n (Mountain States II)*, 763 P.2d 1020 (Colo.1988) (Commission may fashion appropriate remedy for violation of statutory provision); *Peoples Natural Gas Div. v. Public Util. Comm'n*, 698 P.2d 255 (Colo.1985) (Commission may institute a complaint acting on its own motion). The efficacy and versatility of declaratory order proceedings to develop well-founded agency policies and standards in careful, incremental steps is also well recognized. *See NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); *Securities Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). *See generally* R.L. Weaver, *Chenery II: A Forty–Year Retrospective*, 40 Admin.L.Rev. 161 (1986). However beneficial the use of declaratory orders might be, the Commission's broad authority to initiate various types of proceedings is expressly restricted by procedural requirements pertaining to proceedings that are in effect rule-making proceedings. §§ 24-4-103 and -103.5, 10A C.R.S. (1988); *Home Builders Ass'n of Metro. Denver v. Public Util. Comm'n*, 720 P.2d 552, 560 (Colo. 1986). To adopt the view that the Commission may in its discretion develop any procedural rule designed to aid its regulation of public utilities would for all practical purposes nullify the General Assembly's express determination that the exercise of the Commission's broad rule-making authority must be tempered by adherence to procedural requirements designed to protect the public as a whole as well as to ensure fundamental fairness to all utilities subject to such authority.

In our view, when the circumstances of the initiation, progress, process and result of Case No. 6647 are scrutinized in light of the factors relevant to judicial review of Commission proceedings, the conclusion is inescapable that in substance and effect the Commission engaged in rule-making conduct. The parties having conceded that the Commission failed to follow procedures statutorily mandated for the exercise of its rule-making authority, the district court properly determined that the Commission's decision was invalid.

The judgment of the district court is affirmed.

LOHR, J., dissents.

Justice LOHR dissenting:

The majority holds that the Public Utilities Commission (P.U.C.) engaged in rule-making conduct in Case 6647 in which it delineated a list of telecommunications services provided by The Mountain States Telephone and Telegraph Company (Mountain States) that would be subject to traditional regulation by the P.U.C. under the Intrastate Telecommunications Services Act. Because the P.U.C. did not follow statutorily mandated procedures for the exercise of its rule-making power, the majority upholds the judgment of the Denver District Court invalidating the decision of the P.U.C. In contrast, it is my opinion that the P.U.C. engaged in adjudication or, alternatively, adjudication coupled with proper adjudicatory rule-making, within the scope of its authority, in arriving at its decision in Case 6647. Accordingly, I respectfully dissent and would reverse the judgment of the district court and remand for reinstatement of the P.U.C. decision.

The Intrastate Telecommunications Services Act, §§ 40–15–101 to –404, 17 C.R.S. (1990 Supp.) (the Act), establishes a flexible regulatory regime for telecommunications services. The Act divides telecommunications services into three categories based on the extent of the P.U.C.'s regulatory authority. Services subject to traditional regulation by the P.U.C. are governed by Part 2 of the Act, §§ 40–15–201 to –207. Part 4 of the Act, §§ 40–15–401 to –404, exempts certain telecommunications services from P.U.C. regulation. The final category is described in Part 3 of the Act, §§ 40–15–301 to –308, as emerging competitive telecommunications services, i.e., services that the P.U.C. must evaluate to determine the manner of regulation required, including the possibility of deregulation.

Three related proceedings before the P.U.C. involve the classification of telecommunications services provided by Mountain States. First, the P.U.C. initiated Case No. 6635, not limited to Mountain States' telecommunications services, to determine which emerging telecommunications services should be subject to alternative regulation or deregulated pursuant to Part 3 of the Act. Later, Mountain States informed the P.U.C. that it regarded certain specific services as exempt from regulation under Part 4 of the Act. In response, the P.U.C. initiated two declaratory order proceedings. In Case 6645, the P.U.C. sought to identify those Mountain States' services covered by section 40–15–401 and therefore exempt from regulation. In Case 6647, the case now before us, the P.U.C. sought to identify those Mountain States' telecommunications services encompassed by section 40–15–201(2) and therefore subject to traditional regulation.

Under the State Administrative Procedure Act, §§ 24–4–101 to –108, 10A C.R.S. (1988 & 1990 Supp.) (APA), an adjudication is the procedure used by an agency to formulate, amend, or repeal an order. § 24–4–102(2). Declaratory orders are available under the APA to remove uncertainties as to the applicability of any statutory provision. § 24–4–105(11). The P.U.C. initiated Case 6647 in order to determine the applicability of Part 2 of the Act to Mountain States.

An examination of P.U.C. Case 6647 reveals its essentially adjudicatory nature. The purpose of this case is to identify those Mountain States' telecommunications services that would be subject to regulation pursuant to Part 2 of that Act. Under Part 2,

(2) The following products, services, and providers are declared to be subject to regulation pursuant to this part 2 …:

(a) Basic local exchange service;

(b) Basic emergency service;

(c) Public coin telephone service;

(d) White page directory listing;

(e) Local exchange listed telephone number service;

(f) New products and services necessary for the provision of basic local exchange service;

(g) Dual tone multifrequency signalling.

§ 40–15–201(2).[1] In Case 6647, the P.U.C. examined more than ninety telecommunications services offered by Mountain States to determine the statutorily defined category in which each is properly included. The P.U.C. does not decide the wisdom or propriety of regulating these services;[2] the P.U.C. merely applies the statutory criteria to particular services—in the present case the services supplied by a single regulated entity, Mountain States. Such application is the precise objective of the APA's declaratory order procedure.

The majority contends that the Act lacks precise definitions, and, in the absence of administrative standards and policies, this imprecision prevented the P.U.C. from fully and fairly resolving Case 6647. *See* maj. op. at 285. Section 40–15–201(2) expresses the legislative policy decision identifying the telecommunications services that are to be subject to traditional regulation. That section specifies with some particularity the services encompassed by Part 2. This detailed statutory enumeration does not necessitate further administrative embellishment.[3] The P.U.C. is uniquely qualified through expertise derived from many years of regulating the telecommunications industry to resolve any ambiguities that became apparent in applying the statutory criteria to particular telecommunications services.

---

1. Part 4 contains a similarly detailed description of deregulated services:

(1) The following products, services, and providers are exempt from regulation under this article or under the "Public Utilities Law" of the state of Colorado:

(a) Cable services as defined by section 602(5) of the federal "Cable Franchise Policy and Communications Act of 1984";

(b) Cellular telecommunications services;

(c) Mobile radio service;

(d) Radio paging service;

(e) New products and services other than those necessary to provide basic local exchange service;

(f) Centron and centron-like services;

(g) Special arrangements;

(h) Special assemblies;

(i) Informational services;

(j) Operator services;

(k) Advanced features offered and provided to nonresidential customers with more than five lines;

(l) Special access.

§ 40–15–401. Part 3 lists the emerging competitive services as follows:

(2) The following telecommunications products, services, and providers are declared to be initially subject to regulation pursuant to this part 3 and subject to potential deregulation under section 40–15–305:

(a) Advanced features offered and provided to residential customers and nonresidential customers with no more than five lines;

(b) Premium services except as provided in section 40–15–401(1)(f), (g), (h), and (1)(i);

(c) InterLATA toll;

(d) IntraLATA toll, subject to the provisions of section 40–15–306;

(e) Switched access, subject to the provisions of section 40–15–307;

(f) Private line service, subject to the provisions of section 40–15–308.

§ 40–15–301. Furthermore,

(2) Any telecommunications service or product not defined in part 1 of this article or not already classified pursuant to parts 2 to 4 of this article shall be classified as an emerging competitive telecommunications service under this part 3.

§ 40–15–305. Through these enumerations, the legislature classified telecommunications services and specified the appropriate extent of regulatory treatment for each service.

2. By contrast, under Part 3 the P.U.C. decides the method of regulation of particular services and whether to deregulate specific services. The legislature, however, has specified the services that are subject to this P.U.C. discretion.

3. If Part 2 lacked adequate statutory standards and safeguards and administrative standards and safeguards, then the P.U.C.'s attempt to apply Part 2 to Mountain States would be invalid as an uncontrolled exercise of agency discretion, *see, e.g., Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988, 995 (Colo.1991) (contracts with private sector providers for services previously performed by classified state employees invalid in the absence of sufficient statutory and regulatory framework), not as a procedurally defective rule-making proceeding.

The majority also argues that Case 6647 effectively constituted rule-making. According to the majority, the P.U.C. was developing policies for determining which products and services should be subject to traditional, alternative, or no regulation. Maj. op. at 284–285. Although Case 6647 involves only the application of Part 2 to Mountain States, the majority's argument proceeds, the standards and policies established in the case would be applicable to telecommunications services of all public utilities. Maj. op. at 285. Thus, Case 6647 would have effects beyond its immediate application to Mountain States. Furthermore, the P.U.C.'s classification of services under Parts 2 and 4 would affect its determination of services encompassed by Part 3. *See* maj. op. at 284–285. These possible implications for future proceedings, the majority contends, establish that the P.U.C. decision in Case 6647 actually was rule-making.

In *Home Builders Ass'n v. Public Utilities Comm'n*, 720 P.2d 552 (Colo.1986), we invalidated a purported adjudication wherein the P.U.C. adopted a completely new formula for calculating consumer charges for electrical distribution extensions.[4] We reversed the P.U.C. because its adoption of this new formula constituted rule-making and the P.U.C. had not complied with the APA rule-making procedures. We identified several factors demonstrating that the P.U.C. had undertaken rule-making. First, the decision had general applicability to the utility's future permanent customers. *Id.* at 561. These customers were not parties to the P.U.C. proceeding and therefore had no ability to participate in the formulation of the new P.U.C. policy. Second, the P.U.C. characterized the new formula as a "permanent service policy," thereby establishing the intent to apply this formula to future situations affecting many people. *Id.* Finally, the P.U.C. stated that it adopted the new formula as an interim measure pending a more comprehensive revision of the previous formula. *Id.* We commented that the P.U.C. actually amended an existing rule by its decision. In light of these considerations, we found the

P.U.C.'s action to be functionally indistinguishable from *de facto* rule-making. *Id.*

The P.U.C.'s decision in Case 6647 does not exhibit the characteristics of its decision in *Home Builders*. Case 6647 specifically concerns the application of Part 2 to Mountain States, a single utility. This decision does not apply to Mountain States' customers or to other utilities. The P.U.C. did not purport to define the services subject to regulation but merely fit existing services into the statutory classifications. The P.U.C. simply determined the regulatory status of specific Mountain States' telecommunications services based upon existing facts, existing law and the P.U.C.'s regulatory expertise. Although the decision in Case 6647 has implications for future proceedings, such implications will result from any adjudicatory action. Those implications do not require formal rule-making proceedings.

Moreover, any minor policy determination necessitated by the application of the criteria of Part 2 to particular facts is appropriately handled through adjudicatory rule-making. We have recognized that an agency may make policy through either adjudication or rule-making. *Charnes v. Robinson*, 772 P.2d 62, 66 (Colo.1989). Generally, the purpose of adjudicative rules is to fill in the gaps or interstices of statutory or regulatory schemes. *See Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) (*Chenery II*); Weaver, *Chenery II: A Forty Year Retrospective*, 40 Admin.L.Rev. 161, 199 (1988). Part 2 provides a comprehensive statutory scheme and enumerates the services subject to its provisions. The P.U.C. merely decides whether a particular service offered by a specific company comes under the purview of Part 2. This decision involves a factually bound determination which will vary from service to service. The P.U.C. must examine each particular telecommunications service and its relationship to the statutory categories. For example, in Case 6647 the P.U.C. had to de-

---

4. Such charges had previously been computed by multiplying estimated annual gross revenue per customer by a predetermined factor. The

utility sought a ruling lowering that factor but the P.U.C. instead substituted a formula based on gross embedded investment per customer.

cide whether assignment of seven-digit telephone numbers was subject to Part 2. The P.U.C. determined that the seven-digit telephone number was indispensible to the provision of basic service and that the ability to assign or reassign a seven-digit telephone number can have a significant impact upon customers. Therefore, the P.U.C. determined that assigning and changing telephone numbers was part of basic local exchange service and, consequently, pursuant to § 40–15–201(2)(a), subject to regulation under Part 2.[5]

This type of determination at most involves interstitial statutory interpretation. Such interpretations are best arrived at in the context of concrete facts. Given the large number of possible services and the distinct nature of each service, the P.U.C. needs significant flexibility in order to apply Part 2. Thus, general standards would have only marginal utility. The need for flexibility, the individualized nature of each service, and the unsuitability of general standards make adjudicatory rule-making appropriate. *See Charnes*, 772 P.2d at 66.

The majority would require formal rule-making proceedings whenever the P.U.C. determines policy, even within narrow limits. The APA's formal rule-making process entails, among other things, formal and detailed procedures which include published notice of proposed rule-making, § 24–4–103(2), publication of the time, place, and nature of the public rule-making proceedings, § 24–4–103(3)(a), a regulatory analysis, § 24–4–103(4.5), and the attorney general's opinion on the rule's constitutionality and legality, § 24–4–103(8)(b). These detailed procedures are cumbersome and particularly inappropriate for statutory interpretation and interstitial policy making such as that involved in Case 6647, functions that are better performed on a case-by-case basis.[6]

Moreover, the P.U.C. is implementing a new statutory regime. Its lack of experience with the issues arising under this pro-

gram warrants administrative hesitance to rigidify its tentative judgments into hard and fast rules. *See Chenery II*, 332 U.S. at 202, 67 S.Ct. at 1580.[7] Through adjudicatory rule-making and experience in future cases, the P.U.C. can fashion an appropriate, flexible regulatory response to problems arising under its Part 2 determinations.

I respectfully dissent and would reverse the judgment of the district court and reinstate the decision of the P.U.C.

ERICKSON and VOLLACK, JJ., join in this dissent.

---

**5.** The P.U.C. excluded assignment of specifically requested telephone numbers to create a "catchy sequence" or a series of letters spelling specific words.

**6.** The State Administrative Procedure Act does not provide authorization for informal notice and comment rule-making similar to that con-

tained under the federal APA. *See* 5 U.S.C. § 553 (1988).

**7.** The unavailability of informal rule-making under Colorado law further justifies this administrative hesitance.