686 S.E.2d 219

Matthew WYSONG, by his Mother,
Mary L. RAMSEY, Petitioner
Below, Appellee

v.

Martha WALKER, in her Official Capacity as Secretary of the West Virginia Department of Health and Human Resources, and Ray Burl Woods, in his Official Capacity as State Hearing Officer for the West Virginia Department of Health and Human Resources, Respondents Below, Appellants.

No. 34594.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 2009.

Decided Oct. 14, 2009.

Darrell V. McGraw, Jr., Esq., Attorney General, Mary McQuain, Esq., Assistant Attorney General, Charleston, WV, for Appellants.

Bruce Perrone, Esq., Legal Aid of West Virginia, Charleston, WV, for Appellee.

.PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on April 7, 2008. In that order, the circuit court reversed a decision of the Board of Review of the West Virginia Department of Health and Human Resources which had affirmed a determination by the Bureau of Medical Services that the appellee and petitioner below, Matthew Wysong, by his mother, Mary L. Ramsey, had failed to demonstrate that he meets the medical eligibility requirements for participation in the Medical Home and Community–Based Mentally Retarded/Developmentally Disabled Waiver Program (hereinafter "Waiver Program"). Upon review, the circuit court found that Matthew Wysong satisfies the medical eligibility requirements of the Waiver Program.

In this appeal, the appellants and respondents below, Martha Walker, in her official capacity as Secretary of the Department of Health and Human Resources, and Ray Burl Woods, in his official capacity as State Hearing Officer for the Department of Health and Human Resources (hereinafter collectively referred to as "the DHHR"), contend that the circuit court committed reversible error, as a matter of law, by creating an improper standard for medical eligibility determination with regard to the Waiver Program. This Court has before it the petition for appeal, the entire record, and the briefs and arguments of the parties. For the reasons set forth below, the final order is affirmed.

## I.

## FACTS

In June 2006, Matthew Wysong, a Medicaid recipient who was twenty-four years old,

applied for participation in the Waiver Program, a joint federal-state program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v (2003). The Waiver Program allows the State to offer the services and level of care that are provided in an intermediate care facility for individuals diagnosed with mental retardation and/or related developmental disabilities (hereinafter referred to as an "ICF/MR") to eligible individuals in their homes instead of in an ICF/MR. The purpose of the Waiver Program is to provide home and community-based support to individuals with mental retardation and/or other related developmental disabilities in order to achieve the highest level of independence and self-sufficiency possible in their lives. 42 U.S.C. § 1396n (2003 & Supp. 2009).

In order to be eligible for the Waiver Program, an applicant must satisfy certain medical eligibility criteria. First, the applicant must have a medical diagnosis of mental retardation and/or a related condition. Related conditions include autism, cerebral palsy, epilepsy, or any condition, other than mental illness, found to be closely related to mental retardation because the condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons. If the applicant has an eligible medical diagnosis, he or she must demonstrate that the medical diagnosis is a severe chronic disability that manifested before the applicant reached twenty-two years of age and is likely to continue indefinitely. Next, the applicant must show that the medical diagnosis substantially limits functioning in three or more major life areas. The major life areas are: self-care; receptive and express language (communication); learning (functional academics); mobility; self-direction; and capacity for independent living. The applicant must also show that he or she requires active treatment. Finally, the applicant must qualify for a level of care that similarly diagnosed persons would have in an ICF/MR. *See*

DHHR Provider Manual, Chapter 503–ICF/MR Services (2003).[1]

The record indicates that Mr. Wysong has never previously participated in the Waiver Program, nor been a resident of an ICF/MR. Mr. Wysong lives at home with his mother, Mary Ramsey, who acts as his guardian. He was born one month premature on March 15, 1983. He has been diagnosed with cerebral palsy and epilepsy. His first seizure occurred when he was eight months old. He had no seizures from the age of three and a half until he was approximately seventeen years old. He then began having sixty seizures a day. Mr. Wysong had frontal lobe brain surgery to address his seizures in September 2004 at the age of twenty-one and follow-up surgeries in October 2004 and August 2005.

In 2003, Mr. Wysong was evaluated by a therapist and diagnosed with "ADHD, Personality Disorder NOS [not otherwise specified] and Borderline Intellectual Functioning." According to the record, Mr. Wysong can read and write. He attended public school through the eighth grade and was placed in "mild impairment" classrooms. He was home-schooled from the ninth to the eleventh grade and participated in vocational training through WV Rehab in Institute, West Virginia, with some success as he was employed by Goodwill Industries through WV Rehab in 2002. However, Mr. Wysong was not able to complete the program because of difficulties with medication management and safety concerns. He is not currently employed.

Documents submitted with Mr. Wysong's Waiver Program application included an Annual Medical Evaluation, a Psychological Evaluation dated March 9, 2006, and a Social History and Individual Program Plan from Arc of West Virginia, a Medicaid provider of behavioral health services. The Annual Medical Evaluation was completed by Dr. Baker, D.O., who made a diagnosis of "Cerebral Palsy-lacks coordination, Seizure Disor-

---

1. The DHHR Provider Manual cited herein has been renumbered, but the language remains substantially the same. Nonetheless, the former version is referenced in this opinion as it was in effect at the time Mr. Wysong's application for

the Waiver Program was considered. The new version of the DHHR Provider Manual is available at http://www.wvdhhr.org/bms/Manuals/bms_manuals_main.htm.

der–Attention Deficit Disorder, Excessive Compulsive Disorder–OCD." Dr. Baker stated that Mr. Wysong's prognosis was "guarded." He explained that Mr. Wysong is ambulatory but needs assistance after seizures. He is continent and fully capable of feeding himself. With regard to personal hygiene, the report indicated that Mr. Wysong is independent and capable of self-care but that he needs assistance as he is unable to button clothes, cut his nails, or comb his hair. Dr. Baker checked a box on the evaluation form indicating that Mr. Wysong requires treatment at an ICF/MR level of care.

The Psychological Evaluation was completed by a licensed psychologist, Sandi Kiser–Griffith, M.A. She made a diagnosis of cognitive disorder, not otherwise specified. Ms. Kiser–Griffith administered various psychological tests. On the Kaufman Brief Intelligence Test, Mr. Wysong obtained a Verbal Standard Score of seventy-four, a Non–Verbal Standard Score of eighty, and a Composite IQ Standard Score of seventy-three. Ms. Kiser–Griffith also utilized an assessment called the Adaptive Behavior Scale–Residential and Community (hereinafter "ABS"). As discussed in more detail herein, this test is designed to compare the adaptive skills of one adult with that of other adults who have similar disabilities. Mr. Wysong's scores fell within the average range when compared with other adults diagnosed with having mental retardation. Ms. Kiser–Griffith concluded that Mr. Wysong would benefit from training programs designed to increase his efforts and abilities in domestic activities, vocational activities, and social engagement.

Mr. Wysong's application for the Waiver Program was initially denied upon a review of his application and records. The DHHR issued a "Notice of Denial" on June 16, 2006, which stated:

While Mr. Wysong carries the potentially eligible diagnosis of Cerebral Palsy and seizure disorder, the Waiver manual requires that these related conditions must be severe to meet the eligible criteria. Documentation submitted to date does not support that Mr. Wysong's condition is severe as he is ambulatory, expresses himself through language, and can perform basic self-care activities. The presence of substantial adaptive deficits in three or more of the six major life areas considered for eligibility is not supported within the documents submitted for review. Also, the psychological evaluation does not indicate a need for active treatment[.]

Upon receipt of the denial, Mr. Wysong requested a hearing. On May 31, 2007, a hearing commenced before State Hearing Officer Ray Burl Woods. Steven Brady, Operations Coordinator for the Waiver Program, testified with regard to the medical eligibility requirements. Linda Workman, a licensed clinical psychologist and licensed school psychologist, contracted by the Bureau of Medical Services (hereinafter "BMS") to make eligibility determinations, testified on behalf of BMS as an expert witness.

Ms. Workman testified that the documents submitted with Mr. Wysong's application and subsequent thereto did not indicate that his cerebral palsy is "severe." She noted that Mr. Wysong is independently ambulatory and has sufficient fine motor ability to take care of most activities of daily living. Ms. Workman also testified that the documentation did not support the presence of substantial functional limitations in three or more major life activities resulting from cerebral palsy as required by the medical eligibility criteria of the Waiver Program. In addition, she stated that Mr. Wysong did not satisfy the requirement of "continuous active treatment" at the ICF/MR level of care for adaptive deficits attributed to an eligible diagnosis. In other words, she testified that Mr. Wysong does not have any deficits that necessitate the availability of trained MR personnel twenty-four hours a day to teach him functional skills.

The hearing was continued until August 1, 2007, to allow Mr. Wysong to present the testimony of Ms. Kiser–Griffith. At the outset of her testimony, Ms. Kiser–Griffith deferred to Mr. Wysong's treating physician, Dr. Baker, with respect to his physical diagnoses of cerebral palsy and seizure disorder, but acknowledged that his impairment in mobility due to cerebral palsy was not severe. Regarding her psychological diagnosis, Ms. Kiser–Griffith testified that Mr. Wysong's

intellectual functioning is borderline mental retardation. She opined that he has deficits in all six of the major life areas and would benefit from training programs designed to increase his efforts and abilities in domestic activities, vocational activities, and social engagement. Ms. Kiser–Griffith further testified that Mr. Wysong's age equivalent score in the major life area of independent living indicates abilities equivalent to the age of four years and three months. Although Ms. Kiser–Griffith did not specifically state that Mr. Wysong required services through the Waiver Program, she testified that he needs "intensive instruction, services, assistance, and supervision."

On August 15, 2007, Hearing Officer Woods issued his decision which upheld the DHHR's denial of services to Mr. Wysong. Hearing Officer Woods found that Mr. Wysong did have an eligible diagnosis of cerebral palsy but that he did not require active treatment; did not have substantial adaptive deficits in three or more major life areas; and did not require the level of care and services provided in an ICF/MR. Thereafter, Mr. Wysong filed a writ of certiorari in the Circuit Court of Kanawha County.

The case was presented to the circuit court through briefs and oral argument. No additional evidence was submitted. The circuit court issued its decision on April 7, 2008, which reversed the decision of Hearing Officer Woods. The circuit court found that Mr. Wysong does have an eligible medical diagnosis of cerebral palsy which is "severe." The circuit court also found that Mr. Wysong is limited in functioning in three major life areas, specifically, capacity for independent living, self-direction, and self-care. The circuit court further found that Mr. Wysong requires active treatment and meets the requirements for an ICF/MR level of care. The circuit court concluded that if Mr. Wysong was not living at home with his mother, he would have to be placed in a twenty-four-hour care setting with services, training and supervision. The DHHR now appeals the circuit court's April 7, 2008, order.

**2.** *See State ex rel. Ginsberg v. Watt,* 168 W.Va. 503, 505, 285 S.E.2d 367, 369 (1981) ("Department of Welfare [DHHR] is not subject to the Administrative Procedures Act.... Certiorari is

## II.

## STANDARD OF REVIEW

As set forth above, Mr. Wysong sought review of the decision of the Board of Review of the DHHR by filing a writ of certiorari with the circuit court.[2] This Court has recently explained that an abuse of discretion standard is applied in reviewing a circuit court's certiorari judgment. *State ex rel. Prosecuting Attorney of Kanawha County v. Bayer Corp.,* 223 W.Va. 146, 150, 672 S.E.2d 282, 286 (2008). As this Court held long ago, "the circuit court has a large discretion in awarding [a writ of certiorari] ... and, unless such discretion is plainly abused, this Court cannot interfere there with." Syllabus Point 1, in part, *Michaelson v. Cautley,* 45 W.Va. 533, 32 S.E. 170 (1898). *See also* Syllabus, in part, *Snodgrass v. Board of Educ. of Elizabeth Indep. Dist.,* 114 W.Va. 305, 171 S.E. 742 (1933) ("When, after judgment on certiorari in the circuit court, a writ of error is prosecuted in this court to that judgment, a decision of the circuit court on the evidence will not be set aside unless it clearly appears to have been wrong."). With this standard in mind, the assignment of error will be considered.

## III.

## DISCUSSION

The DHHR asserts that the circuit court committed reversible error in this case by substituting its judgment for that of Hearing Officer Woods and creating an improper standard for medical eligibility determinations under the Waiver Program. This Court has recognized that "[o]n certiorari the circuit court is required to make an independent review of both law and fact in order to render judgment as law and justice may require." Syllabus Point 3, *Harrison v. Ginsberg,* 169 W.Va. 162, 286 S.E.2d 276 (1982). In other words, "unless otherwise provided by law, the standard of review by a

the proper means for obtaining judicial review of a decision made by a state agency not covered by the Administrative Procedures Act.").

circuit court in a writ of certiorari proceeding under W. Va.Code § 53-3-3 (1923) (Repl. Vol. 2000) is de novo." Syllabus Point 2, *Bayer, supra.* Therefore, the circuit court was not required to give deference to the decision of the hearing officer. *See West Virginia Div. of Envtl. Prot. v. Kingwood Coal Co.*, 200 W.Va. 734, 745, 490 S.E.2d 823, 834 (1997), *quoting Fall River County v. S.D. Dept. of Rev.*, 552 N.W.2d 620, 624 (S.D.1996) (" 'De novo refers to a plenary form of review that affords no deference to the previous decisionmaker.' ").

■ Having ascertained that the circuit court was authorized to make an independent review as to whether Matthew Wysong satisfies the medical eligibility requirements for the Waiver Program, the decision and the record presented will now be reviewed to determine whether the circuit court made a "clear error in judgment or exceed[ed] the bounds of permissible choices in the circumstances." *Gribben v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995). *See also Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) ("A trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law.").

As outlined above, there are four medical eligibility requirements for participation in the Waiver Program. The first requirement is a medical diagnosis of mental retardation and/or a related condition that is severe. In this case, there is no dispute that Mr. Wysong has an eligible medical diagnosis; in fact, he has two related conditions, cerebral palsy and epilepsy. In addition, the record clearly shows that these conditions manifested before Mr. Wysong was twenty-two years old and that they are likely to continue indefinitely. The question is whether Mr. Wysong's condition is severe.

The circuit court concluded that Mr. Wysong's condition is severe based upon the testimony of both Ms. Workman and Ms. Kiser–Griffith. Both testified that Mr. Wysong's condition "causes him significant impairments," is "more than just minimal," and is "more than just a slight abnormality."

The DHHR contends, however, that Mr. Wysong does not satisfy the severity requirement. In that regard, the DHHR argues that it is reasonable to conclude that an individual diagnosed with "severe cerebral palsy" would likely exhibit substantial limited functioning in the life activity of mobility; yet, the evidence of record shows that Mr. Wysong is ambulatory, continent, able to feed himself, and possesses sufficient fine motor ability to take care of most activities.

Having carefully reviewed the record, this Court is unable to find that the circuit court abused its discretion in concluding that Mr. Wysong's condition is severe. Although Mr. Wysong's cerebral palsy does not affect his mobility,[3] the medical evidence in the record indicates that he does need assistance after seizures. Likewise, the record shows that while Mr. Wysong is capable of basic self-care, he needs help buttoning clothing, cutting nails, combing his hair, shaving, and tying his shoes. When Mr. Wysong's overall condition is considered, the circuit court's conclusion that he satisfies the severity requirement is not clearly wrong.

■ The second requirement for participation in the Waiver Program is a limitation in functioning in at least three major life areas. The circuit court determined that Mr. Wysong satisfies this requirement because he has substantial limited functioning in the areas of capacity for independent living, self-direction, and self-care. The DHHR argues, however, that Mr. Wysong's limited functioning in these areas is not caused by his cerebral palsy, and therefore, he does not satisfy this eligibility requirement. Upon review, this Court finds that the evidence supports the circuit court's conclusion.

As previously noted, in order to determine whether an applicant has substantial limited functioning in a major life area, the ABS is administered during the psychological evaluation. The ABS determines how deficient an individual is in his or her major life activities as compared to other individuals with or without mental retardation or a related condition. In order for an applicant of the Waiver Program to be considered substan-

**3.** The record indicates that Mr. Wysong does exhibit right side motor impairment.

tially limited in a major life area, his or her ABS score must be "three (3) standard deviations below the mean or less than one (1) percentile when derived from non-MR normative populations or in the average range or equal to or below the seventy-fifth (75) percentile when derived from MR normative populations." DHHR Provider Manual, *supra*, § 503.1.

With regard to capacity for independent living, both Ms. Workman and Ms. Kiser–Griffith testified that Mr. Wysong's ABS scores qualified him for the Waiver Program because they were within the average range when compared to other adults with mental retardation. Ms. Kiser–Griffith explained that Mr. Wysong "can't manage his finances, cannot manage his medications, and he doesn't even have a concept of calling in refills or [making] doctor appointments." She stated that he could not work as "[h]e would not have a concept of showing up to work or being able to follow instructions or the social norms of work."

Concerning self-direction, Ms. Workman testified that she did not believe that Mr. Wysong has limitation of function in this area because he does not "just sit around and do nothing for hours at a time." Ms. Kiser–Griffith testified, however, that Mr. Wysong's score on the ABS is in the sixty-third percentile, again placing him in the average range of abilities compared with other adults with mental retardation. Furthermore, Ms. Kiser–Griffith testified that while Mr. Wysong is capable of personal hygiene, he needs prompting as he does not self-initiate those activities. For example, he has to be told to wash his hands and brush his teeth.

Finally, with regard to self-care, Ms. Workman testified that she did not believe that Mr. Wysong has substantial limitation in this area because he is physically capable of performing self-care activities. To the contrary, Ms. Kiser–Griffith testified that Mr. Wysong has both physical and cognitive limitations in this area. She reiterated that Mr. Wysong has a deficit in the ability to self-initiate personal hygiene activities. In addition, she explained that if a certain activity takes five steps to complete, Mr. Wysong can only complete two of the steps.

Based upon all the above, the circuit court did not abuse its discretion in concluding that Mr. Wysong is substantially limited in functioning in three major life areas, namely, capacity for independent living, self-direction, and self-care. Mr. Wysong clearly does not have the capacity for independent living. Moreover, while he is physically capable of performing some personal hygiene activities, the record shows he needs prompting to do so and that he requires assistance to complete certain tasks.

■ The final two eligibility requirements for the Waiver Program are the need for active treatment and the need for an ICF/MR level of care. The circuit court determined that Mr. Wysong satisfies these requirements based upon Ms. Kiser–Griffith's testimony during the August 1, 2007, hearing that Mr. Wysong needs "intensive instruction, services, assistance, and supervision." She explained that without services, training, and supervision, Mr. Wysong will not learn new skills or "increase [his] independence in activities of daily living." She also opined that if Mr. Wysong were not living at home with his mother's care, he would have to be placed in a twenty-four-hour care setting. The DHHR argues that while Mr. Wysong may need services and training, he does not need twenty-four-hour care that is provided in an ICF/MR.

Section 503.1 of the DHHR Provider Manual states that in order for an applicant to qualify to an ICF/MR level of care, evaluations of the applicant must show "a need for intensive instruction, services, assistance, and supervision in order to learn new skills and increase independence in activities of daily living." Based upon the record, the circuit court did not abuse its discretion in finding that Mr. Wysong satisfies the final two requirements to qualify for the Waiver Program. The circuit court's conclusion that "Mr. Wysong is not a 'generally independent' person who is 'able to function with little supervision' " is not clearly wrong. The evidence in the record shows that Mr. Wysong needs services, training, and supervision. Moreover, it is clear that if it were not for his mother's care, Mr. Wysong would need to be placed in a twenty-four-hour care setting.

## IV.

### CONCLUSION

In summary, the record supports the circuit court's conclusion that Mr. Wysong satisfies the medical eligibility criteria for participation in the Waiver Program. In reaching its conclusion, the circuit court did not create a new standard of medical eligibility for participation in the waiver program as the DHHR contends, but instead applied the Waiver Program rules and definitions to the facts of this case. Accordingly, based on all the above, the final order of the Circuit Court of Kanawha County entered on April 7, 2008, is affirmed.

Affirmed.