719 S.E.2d 804

**Patsy HARDY, Secretary of the Department of Health and Human Resources, Defendant Below, Petitioner**

v.

**B.H., a minor, by his next friend and mother, G. H., Plaintiff Below, Respondent.**

**No. 101540.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 18, 2011.

Decided Nov. 18, 2011.

---

we have found no error in this case, we decline to address the petitioner's claim of cumulative error.

Darrell V. McGraw, Jr., Esq., Attorney General, Kimberly Stitzinger–Jones, Assistant Attorney General, Charleston, WV, for Petitioner.

Bruce Perrone, Esq., Legal Aid of West Virginia, Charleston, WV, for Respondent.

WORKMAN, C.J.:

This case is before the Court upon an appeal of the Department of Health and Human Resources ("DHHR") from an Order of the Circuit Court of Kanawha County, West Virginia, entered on July 6, 2010, directing the DHHR to reinstate B.H.'s [1] benefits under the West Virginia Mentally Retarded/Developmentally Disabled Waiver Program ("Waiver Program"). The DHHR argues that the circuit court erred in placing the burden of proof on it rather than on the

---

1. The Respondent is a minor and the Court's customary practice in cases involving minors is to refer to the parties by their initials rather than by their full names. *See, e.g., In re Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

claimant, the Respondent B.H.; in failing to apply the non-mental retardation norms to the Respondent because B.H. does not have a diagnosis of mental retardation; and in finding in favor of the Respondent, despite the Respondent not having substantial deficits in the required number of major life areas. Based upon a review of the briefs and arguments of the parties, the record, and all other matters submitted before the Court, the circuit court's decision is affirmed.

## I. Background

The Court, in *Wysong ex rel. Ramsey v. Walker*, 224 W.Va. 437, 686 S.E.2d 219 (2009), set forth a clear, concise overview of the Waiver Program. The Waiver Program is

a joint federal-state program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v (2003). The Waiver Program allows the State to offer the services and level of care that are provided in an intermediate care facility for individuals diagnosed with mental retardation and/or related developmental disabilities (hereinafter referred to as an "ICF/MR") to eligible individuals in their homes instead of in an ICF/MR. The purpose of the Waiver Program is to provide home and community-based support to individuals with mental retardation and/or other related developmental disabilities in order to achieve the highest level of independence and self-sufficiency possible in their lives. 42 U.S.C. § 1396n (2003 & Supp.2009).

In order to be eligible for the Waiver Program, an applicant must satisfy certain medical eligibility criteria. First, the applicant must have a medical diagnosis of mental retardation and/or a related condition. Related conditions include autism, cerebral palsy, epilepsy, or any condition, other than mental illness, found to be closely related to mental retardation because the condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons. If the applicant has an eligible medical diagnosis, he or she must demonstrate that the medical diagnosis is a severe chronic disability that

manifested before the applicant reached twenty-two years of age and is likely to continue indefinitely. Next, the applicant must show that the medical diagnosis substantially limits functioning in three or more major life areas. The major life areas are: self-care; receptive and express language (communication); learning (functional academics); mobility; self-direction; and capacity for independent living. The applicant must also show that he or she requires active treatment. Finally, the applicant must qualify for a level of care that similarly diagnosed persons would have in an ICF/MR. *See* DHHR Provider Manual, Chapter 503–ICF/MR Services (2003).

*Wysong*, 224 W.Va. at 439, 686 S.E.2d at 221.

## II. Factual and Procedural History

B.H. was born on October 23, 1993, and is currently eighteen years old. According to Dr. Rasmi Kumar, M.D., a psychiatrist, B.H. has been diagnosed with autism with obsessive compulsive disorder traits and hyperactive traits. The circuit court found that B.H. has an IQ of 78 and has not been diagnosed with mental retardation. Additionally, B.H. has substantial limitations in the areas of self-care and capacity for independent learning.[2] According to a psychological evaluation, dated August 8, 2008, prepared by Sandi Kiser–Griffith, M.A., a licensed psychologist, B.H. has a long history of severe behavioral problems consistent with autistic disorder. He exhibits self-injurious behavior in the form of hitting himself, biting himself, and clawing or picking at his skin until he bleeds. He has poor safety skills and must be closely monitored at all times. He will jump from a moving car, walk into traffic, and climb on furniture and buildings if not closely watched. He has an obsession with hot water and must be closely monitored while in the bathroom. He can become physically and verbally aggressive when he is upset. He is resistant to personal care and will refuse to eat due to the texture or taste of food. He also exhibits improper behavior, such as pulling his pants down and urinating in inappropriate places. His overall judg-

---

**2.** Whether B.H. had a substantial limitation in a    third major life area was contested below.

ment, insight and attention span are limited, which is consistent with autism.

▮ B.H. was first found eligible for the Medicaid MRDD Waiver Program in 1998 when he was five years old. He began receiving services in 1999 at age six. B.H. was subsequently re-approved for the program until 2007. The present case arises from a termination notice issued in 2007 and 2008 issued by the DHHR. B.H. was disqualified from the program by decision dated November 3, 2008. On January 6, 2009, B.H. filed a "Petition for Certiorari and Judicial Review of State Agency Decision"[3] in the Circuit Court of Kanawha County and the DHHR filed an answer. The matter was thoroughly briefed and the circuit court decided the case based upon those briefs and the record without oral argument.

The circuit court reversed the DHHR's Board of Review decision based upon the following:

> There needs to be proof of changed medical circumstances "to avoid relitigating the evidence presented in support of the initial administrative decision," i.e., the decision to award benefits. *Vaughn v. Heckler,* 727 F.2d 1040 (11th Cir.1984). Courts have also held that benefits should not be terminated unless substantial evidence is brought forth to show a claimant has improved. *Miranda v. Secretary,* 514 F.2d 996, 998 (1st Cir.1975); *Byron v. Heckler,* 742 F.2d 1232, 1236 (10th Cir. 1984); *Torres v. Schweiker,* 682 F.2d 109 (3rd Cir.1982); *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204 (6th Cir.1981); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981); *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981); and *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982).

Here, the Department has failed to present any evidence that Petitioner's condition had improved since he first began receiving benefits. The fairness concepts of Due Process require a showing of change in circumstances where the Petitioner's condition has improved. *Byron v. Heckler,* 742 F.2d 1232, 1236 (10th Cir.1984).[4]

(Footnoted added). It is from this Order that the DHHR appeals.

## III. Standard of Review

▮ The Court has previously held an abuse of discretion standard of review governs the review of a circuit court's certiorari judgment. *Wysong,* 224 W.Va. at 441, 686 S.E.2d at 223 (*citing State ex rel. Prosecuting Attorney of Kanawha County v. Bayer Corp.,* 223 W.Va. 146, 150, 672 S.E.2d 282, 286 (2008)). Consequently, " 'the circuit court has a large discretion in awarding [a writ of certiorari] ... and, unless such discretion is plainly abused, this Court cannot interfere there with.' Syllabus Point 1, in part, *Michaelson v. Cautley,* 45 W.Va. 533, 32 S.E. 170 (1898)." *Wysong,* 224 W.Va. at 441, 686 S.E.2d at 223. If, however, the appeal from the circuit court involves a question of law, the Court's review is de novo. Syl. Pt. 1, *Lower Donnally Ass'n v. Charleston Mun. Planning Comm'n,* 212 W.Va. 623, 575 S.E.2d 233 (2002)(in a case involving the appeal of a dismissal of a writ of certiorari, the Court held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).). Applying these standards of review, the Court considers the assigned errors.

---

**3.** As the Court noted in *Wysong,* the DHHR " 'is not subject to the Administrative Procedures Act.... Certiorari is the proper means for obtaining judicial review of a decision made by a state agency not covered by the Administrative Procedures Act.' " 224 W.Va. at 441 n. 2, 686 S.E.2d at 223 n. 2 (*quoting State ex rel. Ginsberg v. Watt,* 168 W.Va. 503, 505, 285 S.E.2d 367, 369 (1981)); Syl. Pt. 2, *Michael Bills v. Hardy,* 228 W.Va. 341, 719 S.E.2d 811 (2011) ("Under West

Virginia Code § 29A–1–3(c) (2007), the Administrative Procedures Act does not apply to contested cases involving the receipt of public assistance.").

**4.** The circuit court's decision was based solely upon the determination that the DHHR had not carried its burden of proof that the Respondent's condition had improved since he began receiving benefits.

## IV. Argument

■ The primary issue before the Court is whether the circuit court erred in placing the burden of proof on the DHHR, rather than on the claimant.[5] The DHHR argues, based upon *Lavine v. Milne*, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), that there is no presumption of entitlement to public assistance benefits and that the only presumption is that a claimant is not entitled to benefits unless and until the applicant proves his or her eligibility.

In contrast, B.H. first argues that after he raised the issue regarding the DHHR having the burden of proof in establishing that he had medically improved to the point of no longer needing the benefits from the Waiver Program and citing authority from other jurisdictions supporting this legal point, the DHHR failed to address, in any way, B.H.'s argument. Additionally, B.H. argues that, in *Lavine*, the Supreme Court of the United States was addressing the burden of proof in a case involving a new application for public assistance, not a termination case. Further, B.H. argues that by 'its own regulations, the DHHR has placed the burden of proof upon itself.

The resolution of whether a claimant or the DHHR carries the burden of proof in matters regarding the Waiver Program is readily found in the DHHR's Common Chapters Manual. This manual was drafted by the DHHR and is found on the DHHR's website. The object of the guidelines put in place by the DHHR to govern hearings conducted by the Board of Review is as follows: "The Board of Review is authorized under State law and functions to provide a fair, impartial, and expeditious hearing process to customers of the Department of Health and Human Resources who feel themselves ag-

grieved by Department action." Common Chapters Manual § 700.

Included in the Common Chapters Manual are the following regulations that are directly on point:

> F. Presentation of the Case—The Department will present its case and then the applicant or recipient will present his or her case. **The burden of proof is first on the Department to prove, by a preponderance of the evidence, that its adverse action was correct,** then shifts to the applicant or recipient to prove, again by the preponderance of the evidence, that the Department's action was incorrect.

*Id.* § 710.20(F). Further, an "adverse action" is defined as "[a] change occurring in an *applicant or recipient's case that results in* a reduction or termination of public assistance." *Id.* § 710.11. Based upon the express language of the foregoing regulations, the DHHR has placed the burden of proof on itself in any action that results in a reduction or termination of public assistance under the Waiver Program.

The claimants in these cases are already at a significant disadvantage due to the fact that a majority of the claimants are unrepresented by counsel in these proceedings.[6] The rationale for this regulation may very well be the DHHR acknowledging that a majority of the Waiver Program claimants are not represented by attorneys and often have limited educational backgrounds and no experience in dealing with a governmental agency. Yet, representatives for the DHHR are well-versed in the governmental rules and regulations applicable to this program, as well as having retained psychologists on hand to support its action. Thus, as counsel

---

5. This key issue raised by the DHHR was somewhat of a moving target as it appeared during oral argument that the DHHR's counsel was not arguing the assigned error regarding the circuit court's alleged erroneous placement of the burden of proof on the DHHR. To the extent that the DHHR, during oral argument, attempted to raise an argument not assigned as error, such argument is waived. *See* Syl. Pt. 3, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504

(1977) ("Assignments of error that are not argued in the appellant's brief may be deemed by this Court to be waived.").

6. B.H. was represented by Legal Aid of West Virginia and his counsel represented to the Court during both oral and written argument that approximately 95 percent of the Waiver Program claimants were unrepresented by legal counsel in opposing discontinuation of benefits at hearings in 2010 and 2011.

for B.H. argued, perhaps "[t]o its credit, the Department has recognized this power imbalance in its regulations, and imposed upon itself the obligation 'to prove, by a preponderance of the evidence, that its adverse action was correct....'" The Court concurs with this argument and agrees that the imposition of the burden of proof on the DHHR assists in leveling the inequality of power between the DHHR and a claimant.

Despite the plain and unambiguous regulations authored by the DHHR placing the burden of proof on it in these types of cases, the DHHR argues that the regulation is really the Board of Review providing for the manner that hearings will be administered. The DHHR specifically argues "[b]ut the Board of Review is not authorized to dictate substantive law through its procedural rules. It may not overrule the United States Supreme Court's holding *Lavine v. Milne* that an applicant or recipient of public benefits bears the burden of proof on all issues. *Lavine v. Milne*, 424 U.S. 577, 585–586, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976)."

The DHHR is misguided regarding the United States Supreme Court's holding in *Lavine.* In *Lavine,* applicants for New York home relief challenged a statute that disqualified any person from receipt of welfare for seventy-five days if the person voluntarily terminated his or her employment or reduced his or her earning capacity for the purpose of qualifying for welfare. *Id.* at 578–79, 96 S.Ct. 1010. The New York statute required the applicants to show their eligibility in all respects including demonstrating that he or she did not leave her employment for the purpose of qualifying for welfare. *Id.* at 583–84, 96 S.Ct. 1010.

The Supreme Court upheld the New York statutory scheme, opining that "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Id.* at 585, 96 S.Ct. 1010. Thus, while the Supreme Court, in *Lavine,* upheld the burden of proof placed upon the applicant under the New York statutory scheme, the Court specifically stated that "it is not for us [the Supreme Court] to resolve the question of where the burden ought to lie on this issue." *Id.* In other words, the Supreme Court determined that a state **may** place on welfare applicants the burden of proof on the issue of impermissible benefit-seeking motive.

Other jurisdictions in cases involving reducing or terminating social service or Medicaid-type benefits have placed the burden of proof on the state agency. For instance, in *Weaver v. Colorado Department of Social Services,* 791 P.2d 1230 (Colo.App.1990), the petitioner appealed from the district court's judgment that approved the Department of Social Services determination that the petitioner was no longer eligible to receive benefits under the Home and Community Based Services program. *Id.* at 1231. The Colorado Court of Appeals addressed whether a change in an individual's physical or functional condition since he or she initially was determined to be eligible for benefits was required before the individual's right to such benefits could be terminated. *Id.* at 1234. The Colorado court determined that

> [b]ased upon this general principle, the courts have concluded that, if an individual has once been determined to be eligible for social service benefits, due process prevents a termination of those benefits absent a demonstration of a change in circumstances, or other good cause. The presumption that a condition, once shown to exist, continues to exist, as well as the considerations that underlie the doctrines of res judicata and collateral estoppel, require a showing of some change in circumstances if the termination of benefits is not to be deemed arbitrary. *See Byron v. Heckler,* 742 F.2d 1232 (10th Cir.1984) (relying upon decisions from the First, Second, Third, Sixth, Eighth, and Ninth Circuits); *Trujillo v. Heckler,* 569 F.Supp. 631 (D.Colo.1983).

791 P.2d at 1235.

Similarly, in *Weisenborn ex rel. Shoemaker v. Missouri Department of Mental Health,* 332 S.W.3d 288 (Mo.Ct.App.2011), a recipient of services under the Missouri Comprehensive Medicaid Waiver Program was denied services based upon a finding that the recipient was no longer eligible for the benefits under the program. *Id.* at 292. The recipi-

ent appealed and the lower court reversed and reinstated the benefits. *Id.* at 293. The Missouri Department of Mental Health appealed.[7] *Id.* In addressing whether the recipient qualified as a person with a related condition to mental retardation, the Missouri court stated:

> The burden of producing such evidence at the underlying hearing is set forth in 9 C.S.R. section 45–2.020(3)(C)5, which establishes the appeal procedures within the Department. This section provides that "[t]he head of the facility shall have the burden of proof and the burden of going forward to either establish that either the applicant does not meet the state's statutory criteria for services eligibility or that the client has so improved that s/he no longer would benefit from the level of services which had been previously provided." 9 C.S.R. section 45–2.020(3)(C)5. While inartfully worded, it is clear that the burden was on the Department to produce evidence of whether Weisenborn would require an ICF/MR level of care if she were denied Medicaid Waiver services. Because the Department failed to produce any evidence on this issue at the underlying hearing it has failed to meet its burden.

332 S.W.3d at 301; *see also Collins v. Eichler,* 1991 WL 53447 at *4 (Del.Super.1991)(unpublished opinion)(involving termination of Medicaid waiver for home and community-based services, the Delaware court, in reversing the decision of the Division of Social Services, stated that "[t]he burden of proof was on the State to establish Appellant's benefits would have been terminated. DES Fair Hearing Procedural Manual, § 5405(C)3. Here, Appellee did not at-

tempt to establish Appellant's condition when she was deemed eligible for the services, and consequently, did not establish a change in circumstances. Therefore, Appellee did not meet its burden of proof in this case.").

■ Accordingly, the Court holds that when the West Virginia Department of Health and Human Resources seeks to reduce or terminate benefits that a claimant is receiving under the West Virginia Mentally Retarded/Developmentally Delayed Waiver Program, the West Virginia Department of Health and Human Resources has the burden of proof to show a change in circumstances warranting such action.

■ Based upon a review of the record in this case, the evidence indicates that B.H. has been assessed using the "Childhood Autism Rating Scale" in the "severe range of Autistic behaviors and symptoms." This diagnosis has been the same since B.H.'s early childhood. B.H. also has a lifelong history of severe behavioral issues consistent with autistic disorder. Additionally, the record before the circuit court contained annual psychological assessments of B.H. done in 2006, 2007, and 2008. The 2006 assessment was used to confirm eligibility for the program while the 2007 and 2008 assessments were used to terminate B.H.'s eligibility. A review of the three assessments show no change in B.H.'s condition. Consequently, the circuit court did not err in determining that the DHHR first had the burden to show some medical improvement in B.H.'s condition. Further, the circuit court did not abuse its discretion in finding that the DHHR had failed to meet its burden of proof based upon its review of the record.[8]

---

7. Under Missouri law, the court of appeals reviews the Missouri Department of Mental Health's decision and not the circuit court's decision. Thus, the court of appeal viewed the case as if the recipient was appealing the department's denial of her benefits. *See* 332 S.W.3d at 290 n. 1.

8. Regarding the DHHR's assignments of error concerning the non-mental retardation norms being applicable, as well as B.H.'s alleged failure to have substantial deficits in the required number of major life areas, neither alleged error was addressed by the circuit court in its Order. Rather, the circuit court's decision rested upon

the DHHR's failure to show any evidence in a change of B.H.'s condition warranting a termination of benefits. Because the DHHR failed to meet its initial burden of proof warranting its adverse action in terminating B.H.'s benefits under the Waiver Program, it is simply unnecessary to address either of the two remaining assignments of error.

Recently, however, the Court, in *Shumbera v. Hardy,* No. 35671 (W.Va. Memorandum Decision filed April 4, 2011), upheld the circuit court's determination that the claimant was eligible to receive services through the Medical Home and Community–Based Mentally Retarded/Developmentally Disabled Waiver Program despite evi-

## V. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Kanawha County, West Virginia, is affirmed

Affirmed.

dence from the claimant's treating psychologist that the claimant was not mentally retarded.