719 S.E.2d 811

**Michael BILLS, a minor by his next friend and mother, Ellen Bills, Petitioner Below, Petitioner**

v.

**Patsy A. HARDY, in her official capacity as Secretary of the West Virginia Department of Health and Human Resources; and Todd Thornton, in his official capacity as State Hearing Officer for the West Virginia Department of Health and Human Resources, Respondents Below, Respondents.**

No. 101420.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 7, 2011.

Decided Nov. 18, 2011.

dence from the claimant's treating psychologist that the claimant was not mentally retarded.

Benita Whitman, Bruce Perrone, Legal Aid of West Virginia, Charleston, WV, for the Petitioner.

Darrell V. McGraw, Jr., Attorney General, Michael Bevers, Assistant Attorney General, Bureau for Medical Services, Attorney for the DHHR Charleston, WV, for the Respondents.

McHUGH, Justice:

Michael Bills appeals from the June 24, 2010, order of the Circuit Court of Kanawha County affirming the decision of the Respondent West Virginia Department of Health and Human Resources ("DHHR") that Petitioner was not eligible for the Mentally Retarded/Developmentally Delayed Home and Community–Based Waiver Program ("Waiver Program").[1] As grounds for his appeal, Mr. Bills asserts error based on the trial court's application of an incorrect standard of review and the DHHR's failure to adopt a standard for the purpose of determining whether an individual has substantially limited functioning in the major life area of self-direction.[2] Upon our review of this matter, we determine that the trial court committed error by failing to make an independent review of Petitioner's eligibility for participation in the Waiver Program. Accordingly, the decision of the lower court is reversed and remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, who has a diagnosis of severe autism, has been participating in the Waiver Program since 2000. The Waiver Program allows the State to provide both in-home and community-based services to qualifying individuals at the level of care that would otherwise be provided in an intermediate care facility for the mentally retarded.[3] To participate in the Waiver Program, an applicant must have either a diagnosis of mental retar-

dation or a related development condition that constitutes a severe and chronic disability, such as autism,[4] which manifested prior to the age of twenty-two and is likely to continue indefinitely. In addition to a qualifying diagnosis, an applicant for the Waiver Program must have "substantially limited" functioning in three or more major life areas. The federally-designated life areas[5] include: self-care; receptive or expressive language (communication); learning (functional academics); mobility; self-direction; and capacity for independent living. See 42 C.F.R. § 435.1009 (2010).

In response to Petitioner's application for continued benefits,[6] the DHHR undertook a reevaluation of Petitioner's eligibility to participate in the Waiver Program. Based on its determination that Mr. Bills did not demonstrate substantial adaptive deficits in three or more major life areas, the DHHR issued a Notice of Termination on January 13, 2009. According to the notice, Petitioner's submitted documentation indicated a substantial limitation in only one life area: self-care.

On August 26, 2009, a hearing was held before State Hearing Officer Todd Thornton to review the DHHR's proposed decision to end Petitioner's participation in the Waiver Program. At the hearing, the State stipulated that Mr. Bills was substantially limited in two life care areas: self-care and capacity for independent living. Despite the testimony that was offered on Petitioner's behalf at the hearing, the DHHR maintained its posi-

---

1. The Waiver Program is designed to allow individuals who would otherwise require care in an institution to receive needed services in their own homes and in home-like settings, if the in-home care can be provided at a lower cost than the institutional care. See 42 U.S.C. § 1396n (2006).

2. As a third ground for the appeal, Mr. Bills argues that the trial court erred by upholding the finding that he no longer has mild mental retardation. Because the record developed in this case fails to demonstrate that Petitioner has an eligible diagnosis of mental retardation, we do not address this assignment of error.

3. The Medicaid Home and Community–Based Mentally Retarded/Developmentally Delayed Waiver Program is a program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v (2006). The DHHR administers

the Waiver Program, which is set up in cooperative fashion between the federal and state governments.

4. Other qualifying diagnoses include cerebral palsy, spina bifida, tuberous schlerosis, and traumatic brain injury.

5. While participation in the federal-state medical assistance program known as Medicaid, 42 U.S.C. §§ 1396–1396v, is voluntary, once West Virginia opted to participate in the federal program it became obligated to comply with federal law. See W.Va.Code § 9-2-3 (2007).

6. Federal law requires that there be a reevaluation annually to determine continued eligibility for benefits.

tion that Petitioner had failed to demonstrate substantial limitation in a third life area. By decision issued on October 21, 2009, the Hearing Officer Thornton upheld the DHHR's decision that the documentation submitted on behalf of Mr. Bills did not support a finding of medical eligibility for the Waiver Program based on his demonstration of qualifying functionality (i.e. "substantial limitation") in only two life areas.

Critical to the Hearing Officer's decision that Petitioner failed to meet the requisite level of functionality in the area of self direction were Petitioner's scores on two separate testing instruments.[7] Both instruments purport to measure Mr. Bills' adaptive behavior using the Adaptive Behavior Scale–School, second edition, or ABS–S:2 ("ABS").[8] Based on his IQ, the non-mental retardation norms were used for purposes of evaluating the results.[9] On both of these testing instruments, which were prepared based upon responses provided by Petitioner's mother, Mr. Bills falls at the first percentile for purposes of self-direction. This ranking places him above the designation for qualifying as "substantially limited" as he needed an adaptive behavior score of either three standard deviations below the mean or less than one percentile.[10]

In addition to the scores on these testing instruments, the hearing officer looked to the narrative descriptions that were included in the documents submitted by Petitioner. In his decision, Hearing Examiner Thornton cited to the following excerpt from the September 30, 2008, psychological evaluation: "He enjoys discussions related to his perseverative topics.[11] He enjoys playing with pets.

He will engage in leisure activities when arranged for him and participates in group activities if encouraged to do so at times." In addition, the Hearing Examiner referenced the following narrative from an individualized education plan dated April 22, 2008:

Misho [12] has demonstrated that he is interested in a career involving medical services. He is very interested in hearing about details concerning operations, stitches and emergencies. His interest will take over and he is known to avoid school work by continuing in conversation about his interest. When he becomes behind in his school assignments he will often state that the current class he is taking does not apply to his future in medicine or to work in an ambulance.

Hearing Officer Thornton acknowledged that "[e]xtensive testimony and documentary evidence clearly show that the Claimant [Mr. Bills] is limited with regard to self-direction." [13] Following his observation that policy requires both test scores and narrative to quantify the extent of the limitation, the hearing officer concluded, without additional elaboration, that Petitioner had failed to demonstrate the requisite reduced functionality in the life area of self-direction.

Petitioner sought review of the administrative decision to terminate his participation in the Waiver Program by filing a petition for a writ of certiorari with the circuit court. See W.Va.Code § 53–3–3 (2008). After the petition was granted, Mr. Bills scheduled a hearing before the circuit court [14] and obtained a stay with regard to the subject termination. Without holding any further

7. One instrument is dated September 30, 2008, and the other is dated June 24, 2009.

8. This instrument is published by the American Association on Mental Retardation.

9. While Petitioner argues that mental retardation norms should have been used, both psychologists, including Petitioner's psychologist, testified that the non-mental norms were the appropriate norms against which to measure his results.

10. If mental retardation norms were applicable, the score necessary to qualify as "substantially limited" for purposes of the Waiver Program is equal to or below the seventy-fifth percentile.

11. The term "perseverate" or "perseveration" is a term used with autistic individuals to describe their fixation or obsessive interest in things.

12. "Misho" is Petitioner's nickname.

13. Given the legal nature of the issues before us, we do not find it necessary to set forth additional facts bearing on the level of Petitioner's functioning.

14. The hearing was held on November 24, 2009.

proceedings, the trial court undertook its review of the matter. Proceeding from the perspective that it was required to give deference to the agency's factual findings,[15] the trial court essentially restated the findings previously announced by Hearing Officer Thornton. Articulating that "[t]he DHHR has followed a definite procedure that provides standards and guidelines as a proper basis for determining medical eligibility," the trial court concluded that Petitioner had failed to demonstrate that he was substantially limited in the life area of self-direction. Believing that Mr. Bills was advocating the use of "a different method of testing" by his faulting of the DHHR for failing to adopt policy or regulations which define "self-direction," the trial court concluded that to do so "would be contrary to law."

Through this petition for appeal, Petitioner seeks to reverse the circuit court's decision to affirm the DHHR's determination that he is no longer eligible to participate in the Waiver Program.

## II. Standard of Review

As we recently held in syllabus point two of *Jefferson Orchards v. Zoning Board of Appeals, Inc.*, 225 W.Va. 416, 693 S.E.2d 781 (2010), "[t]his Court applies an abuse of discretion standard in reviewing a circuit court's certiorari judgment." When questions of law are presented in the scope of such review, those matters will be reviewed by this Court in plenary fashion. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, we proceed to determine whether the trial court abused its discretion in affirming the agency's termination decision.

## III. Discussion

### A. Trial Court's Review

In conducting its review of this matter, the trial court applied the standard of review contained in the Administrative Procedures Act ("APA"). *See* W.Va.Code § 29A-5-4(g) (2007). That standard, as the trial court acknowledged, requires deference to the administrative determination of factual findings. Under the APA, a trial court is permitted to overturn administrative findings only when the reviewing court believes those findings to be clearly wrong. *See* Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). The law is clear that under West Virginia Code § 29A-1-3(c) (2007),[16] the Administrative Procedures Act does not apply to contested cases involving the receipt of public assistance.[17] As this Court previously held in syllabus point two of *State ex rel. Ginsberg v. Watt*, 168 W.Va. 503, 285 S.E.2d 367 (1981): "A writ of certiorari in the Circuit Court of Kanawha County is the proper means for obtaining judicial review of a decision made by a state agency not covered by the Administrative Procedures Act." Accordingly, the trial court erred in its application of the APA's standard of review to this matter. *See also Wysong ex rel. Ramsey v. Walker*, 224 W.Va. 437, 442, 686 S.E.2d 219, 224 (2009) (recognizing that in reviewing DHHR decision on Medicaid services, trial court was not required to give deference to hearing officer's decision).

The DHHR contends that "Judge Kaufman's statement that he owed deference to the Department's factual determinations is harmless error." Given the pivotal factual determination at issue here—whether Mr. Bills has the requisite limited functioning in the life area of self-direction—we cannot conclude that the error at issue is harmless. The obligation of a circuit court that accepts a case for review under certiorari is clear: "On certiorari the circuit court is required to make an independent review of both law and fact in order to render judgment as law and

---

15. The trial court believed incorrectly that its review was governed by the Administrative Procedures Act. *See* W.Va.Code §§ 29A-5-1 to -7-4 (2007).

16. This statutory provision was previously included in West Virginia Code § 29A-1-2. *See* Syl. Pt. 1, *State ex rel. Ginsberg v. Watt*, 168 W.Va. 503, 285 S.E.2d 367 (1981) (holding that "[u]nder *W.Va.Code*, 29A-1-2 (1964), the Administrative Procedures Act does not apply to the Department of Welfare").

17. Because the benefits at issue are associated with Medicaid, there is no dispute that this case involves the receipt of public assistance.

justice may require." Syl. Pt. 3, *Harrison v. Ginsberg*, 169 W.Va. 162, 286 S.E.2d 276 (1982); *see also* Syl. Pt. 2, *State ex rel. Prosecuting Attorney v. Bayer Corp.*, 223 W.Va. 146, 672 S.E.2d 282 (2008) (holding that "[u]nless otherwise provided by law, the standard of review by a circuit court in a writ of certiorari proceeding under W.Va.Code § 53–3–3 (1923) (Repl.Vol.2000) is de novo"). The DHHR argues that "the *Final Order* shows that Judge Kaufman reviewed the facts independently and reached the correct conclusion." To support this contention, the DHHR refers to the trial court's language that Mr. Bills' allegations "do not withstand the amount of evidence in this case." Instead of demonstrating that the proper standard of review was employed, we find the opposite: the absence of any significant indicia that the trial court reviewed the record independent of the administrative decision.

■ Of import to this case is the opportunity provided to a trial court to consider additional evidence when reviewing a matter on certiorari. As we acknowledged in *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977), "[u]pon the hearing of [a] writ of certiorari, the circuit court is authorized to take evidence, independent of that contained in the record of the lower tribunal[.]" *Id.* at 248–49, 233 S.E.2d at 413, syl. pt. 4, in part. As part of his closing argument to the hearing officer, Mr. Bills submitted a brief with several documents included as attachments.[18] The DHHR objected to the hearing officer's consideration of those documents on grounds of timeliness; relevancy; authentication; and lack of foundation. Hearing Officer Thornton excluded these items from his consideration, stating:

> These documents were not submitted timely to be considered for purposes of this hearing. Even if considered, these documents and their corresponding arguments only attempt to discredit the validity of the testing instrument used to evaluate the Claimant's functionality area of *self-di-*

*rection* without providing any adequate substitute.

Without passing on the admissibility of the documents Petitioner attached to his closing brief at the administrative level, we recognize that Mr. Bills could have sought to separately introduce these materials once the trial court accepted his petition for certiorari. *See North*, 160 W.Va. at 248–49, 233 S.E.2d at 413, syl. pt. 4.

## B. Lack of DHHR Policy

In challenging the DHHR's decision that he lacks the necessary level of functionality in the life area of self-direction, Petitioner contends that the DHHR has failed to adopt any standard or policy for the purpose of making that determination. Through the documents that were submitted post-hearing and rejected by the Hearing Officer Thornton, Mr. Bills sought to show that other states, in contrast to West Virginia, have adopted policy or guidelines for purposes of making the determination at issue in this case. For example, Alabama defines self-direction as "managing one's social and personal life and ability to make decisions necessary to protect one's self." Ohio asks the question "Can the individual perform the task independently, safely, consistently, without undue effort and in a reasonable amount of time?" Ohio further considers whether the person can "foresee the outcome of one's action; make informed choices that are unlikely to result in harm to self or others; initiate appropriate activities; [and] exercise self-control in daily life."

While it is clearly not the job of this Court to set policy, and we do not seek to do so through this opinion, we recognize the concerns articulated by Petitioner which stem from the DHHR's failure to adopt any policy or regulations for making the self-direction determination at issue. In a case such as this, where it has been argued that by discarding just one component of the ABS[19]

---

18. According to the DHHR, those documents purport to constitute Medicaid program language from the states of Alabama and Ohio as well as excerpts from ABS examination booklets and manuals.

19. That component is part of the self-direction domain and it relates to a claimant's ability to pay attention.

Mr. Bills would qualify for eligibility by falling into the less than one percentile scoring range, the agency's undisputed lack of policy or guidelines in the life area of self-direction certainly increases the prospect of an outcome subject to challenge.[20]

The critical eligibility determinations at issue are made by one of two psychologists who are under contract with the DHHR.[21] That those determinations may in certain instances be subject to the examiner's subjectivity or discretion is suggested by Linda Workman's testimony in another case recently decided by this Court. During a hearing before the trial court in *Shumbera v. Hardy*, No. 35671 (W.Va. Supreme Court, April 4, 2011) (memorandum decision), Petitioner relates that Ms. Workman testified as follows:

> For program self-direction it has to do with whether you initiate activities, make decisions, engage, you know, in making choices about what you will do or not do, and that type of thing. The ABS is very heavily loaded in this domain about—for questions that are about[,] that relate to whether or not [you] stay focused on an activity or whether you see tasks through to the completion.

In the case of someone with ADHD who would typically score very low on the self-direction domain, Ms. Workman purportedly explained in *Shumbera*[22] that she would not rely on the resulting low ABS self-direction score because of the person's ADHD diagnosis. Extrapolating that reasoning to this case, Mr. Bills argued that the attention component of the ABS should be discarded due to his autism, which includes as a symptom, perseveration or fixation on something of interest to him.[23] Rather than being an accurate indicator of his functionality, Mr. Bills argues that his ability to pay attention to something for a period of ten to fifteen minutes is more attributable to his autism diagnosis. While this Court cannot, *sua sponte*, discard the particular component of the ABS testing instrument that deals with attention, we recognize the argument that reliance on an autistic person's tendency to fixate when calculating a score for self-direction seems questionable. Especially when that particular scoring component is the lynchpin which prevents a claimant from obtaining needed services.[24]

Petitioner makes a strong case in support of his position that the DHHR needs to adopt policy and/or standards for assessing the life area of self-direction.[25] *See* 42 U.S.C. § 1396a(a)(17) (requiring eligibility decisions be made pursuant to "reasonable standards ... which ... are consistent with the objective of" the Medicaid Act). The trial court stated in its order that the "DHHR has followed a definite procedure that provides standards and guidelines as a proper basis

20. Counsel for DHHR concurred with the trial court's observation at the hearing on the Motion for a Stay that making the eligibility determination in this case was a "close call."

21. Those individuals are Linda and Richard Workman; the latter was the examining psychologist for the DHHR in this case.

22. As we do not have a copy of the *Shumbera* trial transcript before us, we are relying on Petitioner's representations concerning this testimony.

23. If this were done, Petitioner contends that he would fall within the less than one percentile category on the self-direction portion of the ABS and thus be eligible for the Waiver Program.

24. In his closing brief at the administrative level, Mr. Bills explained that the ABS Self–Direction Domain asks five questions about initiative, pas-

sivity, attention, persistence, and leisure time activity. According to Petitioner, his scores on initiative, passivity, persistence, and leisure time activity, when totaled, are all below the first percentile. When the attention question, which concerns how long a claimant can pay attention to "purposeful activities" is added to the mix, Mr. Bills states that he is .21% above the eligibility level (<1%).

25. Petitioner observes that the WV Medicaid policy does not state which domains of the ABS test are used to show substantial limitation in a major life area. He suggests that rather than just looking to the specific domain on self-direction, that the sub-parts of all domains which address self-direction activities should be considered. For example, any parts of the independent living domain that pertain to self-direction should also be considered. In this fashion, all parts of the ABS test as a whole could be examined for the purpose of assessing self-direction regardless of the domain in which they are listed on the ABS.

for determining medical eligibility." Upon examination, this statement simply does not withstand scrutiny as it pertains to this case. This is because there is no DHHR standard that controls the assessment of the self-direction life area. Without any specified focus for this life area, the inquiry is subject to the discretion of the examiner and necessarily exists in a state of flux from case to case. While the ABS domain of self-direction has ostensibly been looked to for the assessment of Mr. Bills' functionality in this area, Petitioner avers that Ms. Workman testified before the trial court in *Shumbera* that the self-direction domain on the ABS does not measure the same thing "as what we consider to be Self Direction."[26] Further troubling to this Court is that nothing appears to have changed with regard to Mr. Bills' functioning and his need for the services provided through the Waiver Program.[27] And, if he would have qualified by throwing out just one ABS test question that pertained to his attention span—an arguably contestable issue in light of his diagnosis—the case for reconsidering his eligibility for the Waiver Program looks even stronger.

 Having determined that the trial court did not conduct an independent review of the facts of this case as it was required to do, we are reversing and remanding this matter for the purpose of permitting the appropriate scope of review to be performed with regard to the DHHR's decision that Mr. Bills is not eligible to participate in the Waiv-

er Program.[28] On remand, the trial court has the authority to permit the introduction of additional evidence that was not considered by Hearing Officer Thornton.[29] Petitioner may seek to introduce evidence to demonstrate that other states have developed guidelines for assessing the life area of self-direction. Additionally, Petitioner may seek to develop the issue presented in *Shumbera* with regard to whether an individual's particular diagnosis should be taken into consideration when making assessments on a particular component of the ABS or any other testing instrument. Also worth exploring, at the trial court's discretion, is an attempt to have Mr. and/or Mrs. Workman identify what specific factors they rely upon to assess self-direction for purposes of the Waiver Program if the decision is not controlled by the ABS domain in this area.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is reversed and remanded for additional proceedings consistent with the directives stated in this opinion.

Reversed and remanded.

---

**26.** Because Mr. and Mrs. Workman, the individuals with whom the state contracts to do the MR/DD Waiver Program assessments, are husband and wife, it appears that she is including her husband by reference with regard to this pronouncement.

**27.** The only thing that changed is that because of an IQ test result that placed him above the level for the mental retardation norms (he tested at 75 and 70 is the cutoff score for a mental retardation diagnosis), he is now being measured against a different norm.

**28.** Because we find it necessary to remand this matter, we wish to alert both the trial court and the parties of our recent decision in *Hardy v.*

*B.H.*, 228 W.Va. 334, 719 S.E.2d 804 (2011), in which we held that the DHHR has the burden of showing a change in circumstances when it seeks to reduce or terminate benefits that a claimant is receiving under the Waiver Program.

**29.** To be clear, this Court does not fault Hearing Officer Thornton for excluding the documents that Petitioner attempted to rely upon post-hearing to establish that other states have adopted guidelines to assess the life area of self-direction. Ideally, Petitioner would have developed the record on this issue by carefully examining Mr. Workman, the examining psychologist, with regard to how the self-direction life area determination was made.